## S. A. KENNEDY v. W. G. CRAWFORD.

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS
OF BUTLER COUNTY.

Argued October 20, 1890—Decided January 5, 1891.

[To be reported.]

(*a*) An oil lease, reserving royalty, provided that the lessee should com-
mence drilling a well within a specified time and " prosecute said drill-
ing with due diligence to success or abandonment; and, should oil or
gas not be pumped or excavated in paying quantities on or before
June 27, 1886, then this lease to be null and void." A subsequent clause
made the violation of any stipulation in the lease a cause of forfeiture :

1. The drilling could not be regarded as prosecuted to success so long as
no actual product of oil or gas was obtained; and the lessee, after drill-
ing into the oil-bearing rock, and finding oil, for the production of
which it was necessary to pump the well, was bound by his covenant to
exercise due diligence in ascertaining whether the oil could be produced
in paying quantities, and, if it could be, in effecting such production.

2. The provision respecting the production of oil or gas on or before
June 27, 1886, did not give the lessee a discretion to suspend operations
indefinitely, after drilling the well, provided he effected such production
by the date named; and, if, having completed such drilling in Decem-
ber 1885, he ceased operations for three months thereafter, making no
effort during that period to produce oil, he thereby incurred a forfeiture.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILL-
IAMS, McCOLLUM and MITCHELL, JJ.

No. 16 October Term 1890, Sup. Ct.; court below, No. 56
June Term 1889, C. P.

On May 7, 1889, Samuel A. Kennedy brought ejectment
against W. G. Crawford, for one acre of ground in Adams
township. The defendant's plea was not guilty.

At the trial on November 5, 1889, it was shown that the
plaintiff, being the owner of the land in controversy, made an
oil- and gas-lease thereof to the defendant Crawford and W.
A. Gilleland, on June 27, 1885, reserving to the lessor a graded
royalty upon oil produced, in kind, and a royalty upon gas of
ten per cent of its net proceeds. The lease provided that the
land should be held by the lessees, for the purposes therein

specified, " for and during the time oil or gas may be found in paying quantities, not exceeding the term of fifteen years from the date of this lease," and contained, further, the following stipulations :

" The said parties of the second part hereby agree to commence drilling on said test well, within ninety days from June 27, 1885, and to prosecute said drilling with due diligence to success or abandonment, and should oil or gas not be pumped or excavated in paying quantities on or before June 27, 1886, then this lease to be null and void."

" Said second parties do further agree that if oil is found in paying quantities, to protect the property hereby leased by drilling thereon an equal number of wells to any wells that may be started on the lands of other parties adjoining this land ; . . . . . and it is understood and mutually agreed that if said second parties, their heirs or assigns, fail to comply with any of the terms or conditions herein contained, then this lease shall become null and void, and not binding on said first party."

The lessees took possession, under the lease, and commenced the drilling of a well in August, 1885. While the well was drilling, Gilleland assigned his interest in the leasehold, to the defendant. Sometime in December, 1885, the well was put into the oil-bearing rock, with a showing of oil. The defendant testified that there was also sufficient gas in the well to use, and that it contained " oil and gas both, in paying quantities." He testified, further, that he pulled the casing out of the well, with the intention of putting in smaller casing and packing off the salt water, but that, as the weather got very cold, he concluded it would be prudent for him to suspend operations until spring, in view of the fact that it was expensive to case a well and pump salt water in winter ; and so, having taken the tools out of the derrick, he went away without having utilized any gas from the well and without having pumped or produced any oil, or made any preparations for pumping or storing oil, but leaving his engine, boiler and other machinery upon the leasehold ; that in April, 1886, he returned to resume operations, but was notified by the plaintiff not to go upon the premises, and about May 21, 1886, and on subsequent dates, he received written notices to that effect from the plaintiff ; and that in November, 1886, the plaintiff

warned him off and kept him from the land. The notice of May 21st, referred to by the defendant, was as follows :

" May 21, 1886. Mr. W. G. Crawford. I notify you by these lines that the oil and gas lease you and others got of me off my farm in Adams Township, Butler County, state of Pennsylvania dated June 1885, has expired, and I now declare said lease null and void and not binding on me, as you have not complied with the stipulations of said lease, and now you take the machinery way off my land in 48 hours, or I will lay claim on said machinery.     S. A. KENNEDY."

The plaintiff, in rebuttal, denied that he gave any notice to or in any way interfered with the defendant, prior to June 21, 1886, and testified that the notice bearing date May 21st, was really written on June 21st and misdated by mistake ; that the witness intended to give that notice on the day specified in the lease, as that on or before which oil or gas must be pumped or excavated in paying quantities ; and, mistaking the figure 7 in the lease for 1, he wrote the notice on June 21st, instead of on June 27th.

At the close of the testimony, the court, HAZEN, P. J., charged the jury in part as follows :

[The words here, " to prosecute the said drilling with due diligence to success or abandonment," are not limited to the means to the principal end contemplated by the contracting parties, but are rather applicable to the object, the purpose, of the contracting minds when they executed this contract. That purpose was the production of oil or gas. The drilling of the test well was the means to obtain that end ; and, to limit the words, with due diligence to success, only to the drilling of the well, is, in our judgment, a misconstruction of the language used by the parties contracting, and the grantee was bound to commence the test well within the time specified, and his failure to so do was a forfeiture by the terms of this agreement. That he commenced within the time and drilled the well, there is no complaint. It seems that neither party dispute that fact, and you will have no trouble about that. But, was it prosecuted to success or abandonment ? If to success, then what success ? This lease has provisions, and it was read in your hearing by the counsel, as to what oil was to

Charge of Court below.

be given to the grantor; contemplating, clearly, that there was to be a product from this well, of which product the grantor was to receive his share; and success meant, unquestionably, that there was to be a product that could be divided in the proportions named in this contract. It is your duty to decide upon that fact, whether there has been any product whatever divided, or to be divided, or that could have been divided, under any fair construction of this lease. If there is such, we fail to remember it.] [1]

[That there was a spray of oil, a smell of oil, or something of that kind, is doubtless true, and the proofs would lead you to that conclusion, but that was not what was contracted for; it is not what the minds of these contracting parties had in view when they executed this contract. Then, we say to you gentlemen, that, interpreting this condition of this lease, this covenant, it was obligatory on the grantee to commence within the specified time, which it is in proof that the grantee did do; to prosecute that unto success or abandonment; and, having put the well down the depth contemplated, failing to find oil in paying quantities,—and paying quantities is, as contemplated and argued by the counsel for the defendant, a question for the defendant; but the very fact that he did not produce oil which he was bound under the covenants of this lease to do, in some quantity—he might determine whether it paid him or whether it did not, if he had operated the well and taken out but a small quantity,—it is not material how much,—but continued to operate the well, and pay in the proportion provided in this contract, he would have been within the terms of the agreement; but, not having done that, he has not complied with the terms and covenants of this agreement.] [2] [Due diligence required that, even if he had, as he claims, reached oil in paying quantities, if he abandoned, and if you find as a fact that he quit work,—call it abandonment or call it going away, or what you please,—from December until April, it is a violation of this covenant in this written agreement by which the defendant is bound.] [3]

Gentlemen, you take the proofs to determine the facts. Take up what each witness testified to. You try this case by the proofs; the oral testimony by the witnesses. The construction of the written paper is for the court, to be construed

by the court.　We have given you our views of the covenants in this lease, and the proper view to be taken of them in its application to the issue you have been sworn to try. . . . . .

. Plaintiff's counsel asks the court to instruct you upon certain points:

1. If the jury are satisfied from the evidence that work or operations ceased on the well for a period of three months or more, under the terms of the lease it became null and void, and the plaintiff is entitled to recover.

Answer: This is affirmed.[4]

2. If the jury are satisfied that oil or gas in paying quantities was not pumped or excavated from the lease before June 27, 1886, then the lease by its terms became null and void, and the plaintiff is entitled to recover.

Answer: This is affirmed, unless prevented by the grantee.[5]

The defendant's counsel asks the court to charge:

3. The defendant, having successfully drilled said test well to completion and left his rig, machinery, etc., on the said lease, there was no abondonment thereof by him.

Answer: This is not affirmed.　It is asking the court to pass upon a question of fact solely for the jury.[6]

4. That the defendant, Crawford, had until June 27, 1886, to test said well, for the purpose of determining whether it would produce oil or gas in paying quantities; and if he was prevented from doing it by the plaintiff, the verdict must be for the defendant.

Answer: The assumption that defendant had until June 27, 1886, to test this well, completed in December, is not affirmed; but if, after he completed the well, he was prevented from pumping it by the plaintiff, then that part is affirmed.　It was his duty to test the well with due diligence as provided in the agreement, no matter when it was completed, if within the time specified in the lease; and, as we have already stated, if prevented by plaintiff that would prevent the forfeiture.[7]

5. That the written notice of plaintiff to defendant, May 21, 1886, in which plaintiff declared said lease null and void and required defendant to remove his machinery, etc., therefrom, taken in connection with the verbal notice to the defendant, that the plaintiff would not permit him on the premises, was such interference on the part of the plaintiff as excused de-

fendant and preserved to him all his rights, etc., under said lease for the full term thereof.

Answer: This is not affirmed.[8]

6. The defendant having proved that he successfully finished the drilling of said well in December, 1885, having by the terms of said lease until June 27, 1886, to pump and produce oil on the said lease, it was discretionary with him when or at what time he would put said well in pumping condition, so that it was down before June 27, 1886; and, the delay from December to April, at which latter time he went to the premises for the purpose of putting said well in pumping condition, and was notified by plaintiff not to go upon the said lease, did not make said lease null and void.

Answer: This is not affirmed.[9]

7. That under all the evidence the verdict must be for the defendant.

Answer: This is not affirmed.[10]

—The jury returned a verdict for the plaintiff for the land described in the writ. Judgment having been entered thereon, the defendant took this appeal assigning for error:

1–3. The parts of the charge embraced in [ ] [1 to 3].

4, 5. The answers to plaintiff's points.[4 5]

6–10. The answers to defendant's points.[6 to 10]

*Mr. R. P. Scott* (with him *Mr. W. G. Crawford*, p. p.), for the appellant:

1. The clause in the lease, "and to prosecute said drilling with due diligence to success or abandonment, and should oil or gas not be pumped or excavated in paying quantities on or before June 27, 1886, then this lease to be null and void," must be read as a whole, and not separated into parts, as the court below would have it. Reading it as a whole, the latter part of it is the only provision effective for a forfeiture. The words, due diligence to success or abandonment, lost their meaning entirely when the defendant completed his well, developing oil therein. He had a right then to use his judgment as to when he would put the well into condition for pumping, provided he was pumping oil in paying quantities on or before June 27, 1886, and it was not a violation of his covenant to suspend work from December to April. The court should have so instructed the jury.

2. The uncontradicted evidence shows that there was no abandonment by the defendant, and that if the plaintiff had not interfered with him and thus prevented his fulfilling the contract, he would have complied therewith within the specified time. "Equity abhors a forfeiture when it works a loss that is contrary to equity." It is not equitable to allow the plaintiff to enforce a forfeiture in this case, after the defendant has drilled his well at a large expense, taking the risks unavoidably incident to the putting down of a wild-cat well, simply because, in his prudence, he delayed putting the well into pumping condition from December to April, when no injury to the lessor resulted therefrom. To allow such forfeiture " would be to sanction a fraud such as no court has ever permitted:" Westmoreland N. Gas Co. v. DeWitt, 130 Pa. 253.

*Mr. Charles McCandless* (with him *Mr. Kennedy Marshall,*) for the appellee:

The points and assignments of error are all based upon alleged facts which the verdict of the jury has negatived. They have found that operations on the well ceased for a period of three months or more, and that the plaintiff did not prevent the defendant from pumping oil on or before June 27, 1886. The lease, therefore, was void by its terms. Having no facts to stand on, the defendant's points fall.

OPINION, Mr. JUSTICE GREEN:

In point of fact, the event upon which the lease between the parties was, by its express terms, to become null and void, actually transpired. No oil or gas was pumped or excavated in paying quantities, or, indeed, in any quantities, on or before June 27, 1886. Some question arose as to whether the defendant had been prevented by the action of the plaintiff, from producing oil or gas in paying quantities, and, in answer to the defendant's fourth point, the court told the jury that if the defendant completed the well, and thereafter was prevented by the plaintiff from pumping it, the verdict should be for the defendant. There was conflicting evidence on the subject, and as the verdict was for the plaintiff, we must conclude the jury found that the pumping of the well after its completion was not prevented by the action of the plaintiff.

Much of the contest in the case arose upon the construction, and also upon the performance of the covenant of the lease in these words:

"The said parties of the second part hereby agree to commence drilling on said test well within ninety days from June 27, 1885, and to prosecute said drilling with due diligence to success or abandonment; and, should oil or gas not be pumped or excavated in paying quantities on or before June 27, 1886, then this lease to be null and void."

It was not disputed that the drilling of the well had been commenced within the proper time, and had been prosecuted continuously until some time in the month of December, 1885, when the defendant ceased his operations, withdrew the casing, took down the tools out of the rig, and left the premises. The defendant claimed that he had completed the well; that he found gas and oil in paying quantities, and that he left the well and the premises because it was cold weather; and that he intended to return in the spring, in April, and resume operations. He claimed, also, that he had until June 27, 1886, to pump the well in paying quantities; and he testified that he went back in April, to resume operations, but that the plaintiff warned him off, and refused to allow him to go on with the work. This testimony was denied by the plaintiff, who said he never interfered with him in April, or at any other time, until, about the 21st of June, he served a written notice on the defendant to the effect that the lease had expired, and that it had become void, and that he must remove the machinery from the land. This notice was in fact dated May 21st, but the plaintiff testified that he wrote May by mistake for June, as it was really June when it was written and served, and he wrote 21st, instead of 27th, because he mistook the figure 7 for 1 in the lease, and thought the end of the year had arrived. The plaintiff denied distinctly that he had notified the defendant in April, or at any other time, or in any other circumstances than by the written notice dated May 21, 1886, erroneously as he said for June, to leave the premises or remove the machinery. All this testimony was for the jury, and, as they have found for the plaintiff, we must assume they gave credence to the plaintiff's testimony, and not to the defendant's, so far as it bears upon this part of the case. On cross-examination, the defend-

ant admitted that he had never obtained any gas or oil from the well for actual use, and that when he drew the casing, took down the tools, and left the premises in December, he did nothing more, and did not even return to the premises until in April following.

The court construed the expression in the lease, " to prosecute the said drilling with due diligence to success or abandonment," to mean that there must be a product obtained capable of division between the parties in the proportions mentioned in the lease, and that unless this was done, the drilling was not prosecuted to success. He left it to the jury to say whether any product had been obtained which was divided or could be divided in any proportion whatever. It was admitted by the defendant, and proved by the plaintiff, that no such product had ever been obtained. We quite agree with the court below that the work could not be regarded as prosecuted to success, so long as no actual product of oil or gas was obtained.

The court further charged that due diligence required that the lessee was not at liberty to leave the work from December till April, even if he had found oil or gas in paying quantities, and in this, also, we think the court was right. It would certainly not be diligence to leave the well and cease all operations on it, if it was a producing well, for three entire months; and, if it had not yet, at the time the work ceased, been proved to be a producing well, it would be still less diligent to abandon the work for so long a period, especially as the lease was to become null and void, unless oil or gas was produced in paying quantities by June 27th following. By the middle of December, one half the year had about expired; four months more of idleness would leave but two months of the entire period of testing, and certainly such an amount of inactivity could not be regarded as due diligence in carrying on the work. There was no proof that oil or gas had been found in paying quantities, except the defendant's declaration to that effect, but that was a mere matter of opinion on his part, since he admitted on cross-examination that he had not actually produced any oil or any gas. We cannot think the court was in error when they left to the jury the question whether the forfeiture had been incurred by a lack of due diligence in prosecuting the work.

The defendant contended, however, that he had an absolute

discretion to delay his operations indefinitely, provided he produced oil in paying quantities at any time before June 27, 1886, and that he was prevented from exercising this discretion at any time after April, by the action of the plaintiff. We have already seen that the jury has found against him as to prevention by the plaintiff, and we do not agree that he had a right to desist from operations up to the day of the expiration of the time limited. He was subject to an obligation of due diligence during the whole of the time; and then, if, being duly diligent in his work, he produced oil or gas in paying quantities at any time on or before June 27, 1886, there would be no forfeiture. This is practically the view the court took of the contract relations of the parties, and the facts disputed were left to the jury, who found them against the defendant. This included the fact of abandonment, of which we think there was sufficient evidence to justify the verdict. The assignments of error are all dismissed.

Judgment affirmed.

Argued October 20, 1890—Decided January 5, 1891.