R. E. TAYLOR SYNDICATE et al. v. JAMES.*
(No. 1996.)

(Court of Civil Appeals of Texas. Amarillo. June 28, 1922. Rehearing Denied Oct. 4, 1922.)

I. Appeal and error ⬳1040(13)—Sustaining exception to part of answer alleging fact proved and found not injurious.

In action on bond conditioned for drilling of an oil and gas well with due diligence, sustaining of special exception to part of answer setting up financial stringency and inability to procure money with which to prosecute the work, was not materially injurious where the evidence showed and court found that defendants were unable to finance the work because of financial stringency.

2. Mines and minerals ⬳78(1)—Lessee's obligation to drill well with due diligence not affected by financial stringency or inability to procure capital.

Where agreement for oil and gas lease, the lease itself, and bond to secure its performance required that well be commenced within six months and drilling prosecuted with due diligence, or that a specified rental be paid, the lessees, in the absence of any saving clause, were not relieved of their obligation to prosecute the work with due diligence because of a financial stringency and their inability to procure capital.

3. Mines and minerals ⬳78(1)—Obligation to drill well with "due diligence" construed.

An agreement for an oil and gas lease, the lease itself, and a bond to secure its performance, requiring that well be commenced within six months, and that drilling be prosecuted with "due diligence," meant that the lessees would prosecute the work continuously with labor essential to the work and for the speedy accomplishment of the design, with constancy and steadiness of purpose, and would expend therefor whatever money might be necessary for that purpose.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Due Diligence.]

4. Mines and minerals ⬳78(1)—Notice that suit would be brought on lessees' bond unless work commenced did not excuse failure to prosecute work.

Where oil and gas lessees gave a bond conditioned for the drilling of a well with due diligence or the payment of a specified rental, notice by the obligee after work had ceased that suit would be brought unless work was commenced did not relieve the lessees from exercising diligence, as it was not a notice of forfeiture, and recognized the lessees' rights on the land, especially where they had ample time after receiving the notice to commence work before the suit was filed.

5. Mines and minerals ⬳78(1)—That derrick and material were on ground did not establish prosecution of drilling with due diligence.

Under an oil and gas lease and bond to secure performance requiring the drilling of a well with due diligence, the fact that a derrick and some material were on the ground did not establish the fact of prosecution of drilling with due diligence, where no work of any character was being done.

Appeal from District Court, Dallam County; Reese Tatum, Judge.

Action by A. M. James against the R. E. Taylor Syndicate and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Clifford Braly, of Dalhart, and W. T. Allen, of Henrietta, for appellants.
Tatum & Strong, of Dalhart, for appellee.

HUFF, C. J. This action is founded upon a breach of the covenants in the bond de-

clared upon, dated October 18, 1919, which is as follows:

"Know all men by these presents, that we, R. E. Taylor, H. Boddy, W. H. Stenger, H. M. Muse and C. O. Taylor, known as the R. E. Taylor Syndicate, are held and firmly bound unto A. M. James, trustee, in the sum of two thousand, six hundred and eighteen ($2,618.00) dollars, payable in Dallam county, Texas,, conditioned that, whereas, the said above-named parties have procured oil and gas leases upon land situated in Dallam county, Texas, to the amount of about 20,000 acres of land and contracted with the drilling company to drill a well upon some of the land so leased to a depth of three thousand (3,000) feet unless oil or gas is found at a less depth: Now, if said above-named obligors shall cause said well to be drilled to a depth of three thousand (3,000) feet unless oil or gas is found at a less depth, the drilling of said well to be commenced within six months from the date of this obligation, and to be prosecuted with due diligence, and in a good and workmanlike manner until the same is completed or pay fifty cents per acre to the lessor for five thousand two hundred and thirty-six acres leased to the said R. E. Taylor Syndicate, then this obligation shall become null and void, but otherwise to remain in full force and effect. The said A. M. James, the payee herein, is trustee for all of the owners of the land upon which the obligors herein hold leases."

Signed by the parties making the bond, above named.

On the 15th day of September, 1919, A. M. James entered into a contract with the Taylor Syndicate, by the terms of which he agreed to lease the land described in a lease attached to the contract, and agreed to furnish an abstract showing title, etc. The third clause of the contract reads as follows:

"When the title to the land conveyed by the said lease is accepted by the party of the second part, then the said party of the second part shall make and furnish a good and valid bond in the sum of fifty (50c) cents per acre of said lease, payable to the effect that said parties of the second part will drill or cause to be drilled an oil well on some part of the Perico Community lease, to the depth of three thousand feet, unless oil or gas is found in paying quantities at a lesser depth. And it is further understood and agreed that said party of the second part or its assigns is to begin operations on said well within six months after the title to said lease has been examined and accepted, as a good and valid title by the attorneys for the party of the second part.

"And it is further agreed and understood that in the event the said parties of the second part or their assigns shall fail or refuse to comply with terms of this contract then the sum of fifty cents per acre, as provided for in said bond, shall be paid over to the party of the first part, as liquidated damages, or a rental of fifty cents per acre for the deferment of the beginning of a well for twelve months on said attached lease, shall be paid to the party of the first part by the party of the second part."

Attached to this contract is a lease bearing date September 15, 1919, which stipulated that the lessor, James, in consideration of $10 cash and other covenants and agreements therein named, leased and let to the syndicate for the sole and only purpose of mining and operating for oil and gas, etc., several different parcels of land, aggregating 5,236.45 acres, more or less. The lessee covenanted to deliver to the lessor one-eighth of the oil and to pay $150 for each gas well, etc., and the following covenant:

"If no well be commenced on said land on or before the 25th day of April, 1921, this lease shall terminate as to both parties unless the lessee on or before that date shall pay or tender to the lessor or to the lessor's credit, in the Midway Bank & Trust Company bank at Dalhart, Texas, or its successors, which will continue as a depository regardless of changes in the ownership of said land, the sum of $2,618.22, which shall operate as a rental and cover the privilege of deferring the commencement of a well from twelve months from said date. In like manner and upon like payments or tender, commencement of a well may be further deferred for like periods of the same number of months successively; and it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privilege granted to the date when said first rental is payable as aforesaid, but, also the lessee's option of extending that period as aforesaid and any and all other rights conferred."

Other covenants are not deemed necessary to set out. The facts in the case show that the syndicate accepted the title to the land, and the lease was delivered under the contract, and that the bond was then executed and delivered.

The petition in this case was filed by A. M. James, against the appellant syndicate and the named individuals in the bond, setting out the execution of the bond and the above contract. That the appellants commenced drilling a well upon the land, and drilled about 1,000 feet, and that about the 1st of September, 1920, they stopped drilling and abandoned the same, and began moving their machinery and tools from the premises, and breached their promise or contract in prosecuting with diligence the drilling of the well to the depth of 3,000 feet. He also alleged in the contract that the word "trustee," used in the bond, as referring to James, was a mutual mistake; that the land was in fact his individual land, and that he was the owner of the land, and executed the contract and lease in his individual right, and that there was further mutual mistake in the bond in the statement that "unless oil or gas is found at a less depth"; that it should have read, "unless oil or gas is found in paying quantities at a less depth." The case was tried before the court without a jury, and upon findings of fact he rendered judgment for the appellee, James, against the appellants for the sum

of $2,618, with interest from the date of judgment. The court, in his findings, found the execution of the contract as set out by James, and that the bond was made for the benefit of James alone, who owned the property, and that the oil and gas discovered should be in paying quantities.

The seventh finding of the court is:

· "That the defendants, appellants here, did cause, within six months after the execution of said bond, the beginning and the operations incident to the boring of an oil or gas well on section 37, block 8, Capitol Syndicate subdivision, in Dallam county, Texas, said tract of land being located in Dallam county, Texas, near the town of Perico, and upon part of the land known as the 'Perico Leases,' which had been obtained by the defendants prior to the time of securing leases from A. M. James; said well being a test well which the said defendants had delegated themselves to drill, and that the said defendants continued the boring or drilling of said well until it had reached approximately 1,000 feet in depth, which depth was reached about the month of September, 1920, and at which time operations for further drilling by said defendants, or any other firm, person, or corporation, ceased, and that shortly thereafter the defendants, or persons who were engaged in such drilling operations, began to and did remove many of the tools, equipment, and other necessities used in such drilling operations away from said well and said location, and have not since said time done any more work or prosecuted the drilling operations thereon in any effort to complete said well, nor have they begun the drilling of any other well upon said leases held by defendants in the county of Dallam, state of Texas."

He further finds that in the latter part of October, 1920, the appellee notified the appellants which was subsequent to their removal of part of the material, and after they had ceased work on the well, to at once proceed with the drilling on the well, and in case they failed to do so to pay him the sum of $2,618, called for by the bond. He finds also that oil or gas was not found in the well in paying quantities, and in fact that no oil or gas at all, but only indications of oil and some little gas, was found; that after receiving the notice appellants wholly failed to renew any operations in connection with the drilling of the well for oil or gas on the land, and that the appellee again, through his attorneys, demanded payment as stipulated in the bond. Under the twelfth finding the court finds:

"That the demand of the plaintiff upon the defendants to either renew drilling operations or pay the amount stipulated in said bond was made subsequent to the ceasing of drilling operations, and after defendants had ceased to drill the same with due diligence and in a workmanlike manner; that the said demand did not in any manner prevent said defendants from continuing the drilling of said well and the prosecution of said work with due diligence and in a workmanlike manner until same was completed, under the terms of said bond, and that the stopping of the work on said well was due solely to the inability of the defendants to further finance said operations; that neither said bond nor said contract made any provision for the stopping of said work or excuse defendants from the penalty of said bond on account of the financial inability to proceed with the said work."

The original petition in this case was filed on February 9, 1921. The evidence supports the finding of the court that the appellants ceased to drill on the well at the time found by him, and that they have not since that date drilled upon the well or done any work upon it, or upon any of the other lands owned by the appellee.

[1-3] The first assignment is to the effect that the trial court erred in sustaining the appellees' special exception to that part of their answer which set up that, owing to an unprecedented and sudden financial stringency, the appellants were unable to procure money with which to prosecute the work and employ labor and obtain material necessary to the work of drilling, etc. It will be perceived by the court's finding, and in fact the evidence shows that they were unable to finance the matter, and the court finds their inability to do so was on account of financial stringency. Evidently the appellant received no material injury by the ruling of the court in sustaining the exceptions to its answer as he considered it, and made a finding, but as the question is presented in the record on the grounds of diligence as an excuse for not prosecuting the work, with due diligence, we have decided to consider the propositions made by appellant in their brief under this assignment. The propositions in effect state the court was in error in sustaining the exceptions, because it is asserted the fact that the bond did not expressly relieve them from their obligation to pay in case of financial stress, which renders it impossible to diligently pursue drilling operations in a workmanlike way, in that such subsequent conditions were not required to be set forth in the terms of the contract, which was merely evidence tending strongly to show appellants were not guilty in failing to prosecute the work with diligence; that matters of evidence to show a party to a contract had not violated its terms, and which cannot be foreseen, are not required to be embodied in the contract; that it would be unreasonable to require such subsequent transactions to be set forth in the contract.

It should be borne in mind this is a suit for a breach of the contract, and not an action in tort. The contract required the appellant, after it started drilling, to continue with due diligence and in a workmanlike manner. It is not charged that they were negligent in a failure to use due diligence, but that they failed to perform their contract obligation to do so. It will be ob-

served the contract and bond, as well as the lease, stipulated, if the appellant failed to begin drilling within the stipulated time, appellants would pay 50 cents per acre on 5,236 acres of land, which would amount to $2,618, the amount of the bond, and for the succeeding year the same sum for deferred operations. If they began drilling in six months, then there was no rental due, but the appellants obligated themselves, after beginning, to prosecute drilling with due diligence and in a good and workmanlike manner. It is evident from the contract the parties understood after beginning the work no rents would be due, but in lieu thereof, if due diligence was not exercised, the appellee would be entitled to his rentals or its equivalent, $2,618. It would appear due diligence, therefore, was made an express covenant of the contract. If the appellant had not begun drilling within the period, we apprehend there would be no contention that appellants would be relieved of their obligation to pay the rent because of financial stress. If they had been ever so vigilant in trying to procure the necessary funds and failed to pay the rent, they would nevertheless be bound by their obligation. The obligation to commence drilling in six months and prosecute with due diligence is contractual, and does not rest upon tort or negligence. In determining the sense in which due diligence was used by the parties, we think it proper to consider the other provisions relating to payment named in the contract. It would seem the sense in which diligence is used in the contract would fall under that part of its definition which means:

"The doing of an act or series of acts with all practical expedition, with no delay except such as may be incident to the work itself. Steady application to business of any kind. Constant effort to accomplish any undertaking. That constancy or steadiness of purpose or labor which is usual with men engaged in a like enterprise and who desire a speedy accomplishment of their design. Such assiduity in the prosecution of an enterprise as will manifest to the world the bona fide intention to complete it within a reasonable time." 18 C. J. 1039, and cases cited in note; Ophir Silver Mining Co. v. Carpenter, 4 Nev. 534, 97 Am. Dec. at page 555; U. S. v. Midway Northern Oil Co., (D. C.) 232 Fed. 619, 626; Kennedy v. Crawford, 138 Pa. 561, 21 Atl. 19.

As further illustrating the meaning of diligence in drilling as required under the terms of this contract and in the light of other contracts relative thereto, we quote the following:

"But where the location is incomplete, no question of assessment work is involved. What the attempting locator has is the right to continue in possession, undisturbed by any form of hostile or clandestine entry, while he is diligently prosecuting his work to a discovery. This diligent prosecution of the work of discovery does not mean the doing of assessment work. It does not mean the pursuit of capital to prosecute the work. It does not mean any attempted holding, by cabin, lumber pile or unused derrick. It means the diligent, continuous prosecution of the work, with the expenditure of whatever money may be necessary to the end in view." McLemore v. Express Oil Co., 158 Cal. at page 563, 112 Pac. at page 61 (139 Am. St. Rep. 147).

In U. S. v. Midway Northern Oil Co., supra, the court had under consideration the interpretation of the saving clause in an act authorizing entry upon public lands for mining purposes, and the construction of that clause with reference to diligent prosecution of work leading to discovery. The land in that controversy was situated in an arid section of the state, and it was difficult and impracticable to obtain water in sufficient quantities for successful drilling. The claimants would have proceeded with the work looking to a discovery but for their inability to obtain water for use in their boilers and for drilling purposes. The court, after quoting the act, and from the authorities, commented as follows:

"Now, the mere effort, however diligent, to obtain water for drilling purposes, or the inability to do so, which is all the evidence for the defendants tends to show, cannot be held to constitute diligent prosecution of work looking to discovery any more than the pursuit of capital to prosecute such work, or a lumber pile or unused derrick, can be held to constitute such diligence. The question is not whether the defendants were able to prosecute the work of discovery at the date of the withdrawal order, but whether they were actually engaged in such work at that time."

So we think when appellants obligated themselves, if they should begin drilling on the land within six months, they would prosecute the work with due diligence they thereby undertook to do so continuously with labor essential to the work and for the speedy accomplishment of the design, with constancy and steadiness of purpose, and to expend therefor whatever money may be necessary for that purpose. The appellants knew their financial condition and ability when they executed the bond. If they desired to exempt themselves from unforeseen contingencies as to their financial ability they should have added the saving clause in the contract. "If the parties to a voluntary contract make no provision for a dispensation, the law gives none. It does not allow a contract, fairly and voluntarily made, to be amended, and it does not permit to be interpolated what the parties themselves have not stipulated. The promisor may not be compelled to perform the undertaking, but he cannot, on account of hardship, or impossibility of performance of the undertaking, relieve himself from the liability incurred by the contract. Accordingly, one who voluntarily enters into an absolute contract with-

out qualification or exception" to prosecute with due diligence until an oil well is completed must abide by the contract regardless of an unsuccessful pursuit for capital to prosecute the work. If the appellant had entered a clause qualifying their diligence in the work conditioned upon their ability to finance the same, appellee probably would not have accepted the obligation, but would have relied upon the rent provision, which was not subject to such contingency. We believe the trial court properly sustained the exception, and properly refused to render judgment for appellants on their plea that, owing to the financial stringency, they were unable to complete the work or to excuse their want of continuous, diligent work in drilling the well. Northern Irr. Co. v. Watkins (Tex. Civ. App.) 183 S. W. 432, and authorities cited; Pecos, etc., v. Amarillo Street Railway Co. (Tex. Civ. App.) 171 S. W. 1103, and authorities cited. 5 Page on the Law of Contracts, par. 2707, p. 4769.

[4, 5] The appellants also assert the evidence did not authorize the finding of the court that they did not prosecute the work with diligence because the appellee notified them suit would be brought on the bond for the sum due upon the breach of the covenant. This was not a suit for forfeiture but a suit upon the covenant. This did not excuse the appellant from diligence in the work. They had ample time after receiving notice in October to commence work, and before suit was filed in February following to have begun the work. If they had used diligence in beginning they might have saved themselves from suit. The notice to commence work, or they would be sued, did not deprive appellants or pretend to do so, of a right on the land, but, on the contrary, recognized their rights thereon for that purpose. The evidence is sufficient to show the work had ceased and was not being prosecuted with diligence; in fact, no work was being done of any character or with diligence. Merely leaving a standing derrick and some of their material on the ground does not establish they were prosecuting the drilling with diligence. It might tend to show they had not abandoned the land. They were not sued for abandonment. We believe the evidence sufficient to support the court's finding.

Affirmed.