In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-09-00023-CV


______________________________




VALENCE OPERATING COMPANY, Appellant



V.



ANADARKO PETROLEUM CORPORATION, Appellee




 


On Appeal from the Fourth Judicial District Court


Rusk County, Texas


Trial Court No. 2001-032




 



Before Morriss, C.J., Carter and Cornelius,* JJ.


Opinion by Justice Cornelius



________________________

*William J. Cornelius, Chief Justice, Retired, Sitting by Assignment


O P I N I O N 



 This case involves the interpretation of a nonconsent provision in a joint operating agreement
to develop oil and gas leases. Although the case presents many issues, the principal question is
whether Valence Operating Company (Valence) actually commenced work on its proposed operation
to drill four wells within the time frame specified by a joint operating agreement.

 Valence entered into a joint operating agreement with Anadarko Petroleum Corporation's
(Anadarko) predecessor, Union Pacific Resources Company to develop oil and gas leases in the
Ballow Estate Gas Unit No. 1 in Rusk County. Anadarko, which owned a 65.62 percent working
interest in the unit, was designated Operator in the Joint Operating Agreement. Valence was a
nonoperator, owning an approximate twenty-one percent interest. 

 Pursuant to Article VI of the Joint Operating Agreement, Valence proposed to drill four wells
in the unit. As a nonoperator, Valence's proposal to drill the wells was specifically covered by
Article VI.B.1 and 2, which provided:

 1. Proposed operations: 

 Should any party hereto desire to drill any well on the Contract Area other than the
(initially proposed well contemplated by the agreement) . . . the party desiring to drill,
rework, deepen, or plug back such a well shall give the other parties written notice
of the proposed operation, specifying the work to be performed, the location,
proposed depth, objective formation and the estimated cost of the operation. The
parties receiving such a notice shall have thirty (30) days after receipt of the notice
within which to notify the parties wishing to do the work whether they elect to
participate in the cost of the proposed operation. Failure of a party receiving such
notice to reply within the period above fixed shall constitute an election by that party
not to participate in the cost of the proposed operation.

 2. Operations by Less than All Parties: 

 If any party receiving such notice elects not to participate in the proposed operation,
then, in order to be entitled to the benefits of this article, the party or parties giving
the notice and such other parties as shall elect to participate in the operation shall,
within sixty (60) days after the expiration of the notice period of thirty (30) days
actually commence work on the proposed operation, and complete it with due
diligence.


 The Joint Operating Agreement also provided that 

 [t]itle examination shall be made on the drill site of any proposed well prior to
commencement of drilling operations . . . . No well shall be drilled on the Contract
Area until after (1) the title to the drill site has been examined as above provided, and
(2) the title has been approved by the examining attorney or title has been accepted
by all of the parties who are to participate in the drilling of the well.


 Pursuant to Article VI.B.1, Valence sent a letter to Anadarko on December 14, 1999,
proposing "immediate drilling" of four wells in the contract area. Anadarko received the letter on
December 17. Valence gave Anadarko thirty days from its receipt of the letter to consent to the
project. Because the cost of the proposed project is only borne by consenting parties, a
nonconsenting party relinquishes its interest to consenting parties for a period of time. Also, a
nonconsenting party does not enjoy the revenue from a proposed project until all consenting parties
have recovered their costs, along with an additional portion of revenue to compensate them for the
risks  taken  in  investing  in  the  project.  Anadarko  did  not  consent.  Therefore,  as  prescribed
by Article VI.B.2, Valence became the operator for the purposes of its proposal, and was mandated
to "actually commence work on the proposed operation" by March 17, 2000. Once the project
began, Valence was required to "complete it with due diligence" in order to reap the benefits of
Anadarko's nonconsent status. When the deadline passed, Anadarko brought suit against Valence
for breach of contract, negligence, declaratory judgment, quantum meruit, unjust enrichment,
conversion, and an accounting, alleging that Valence failed to perform its obligation  to  actually
 commence  operations  for  drilling  the  proposed  wells  before March 17, 2000.

 Both Valence and Anadarko contended at trial that the issue of Valence's compliance with
the requirement of Article VI.B.2 that Valence "actually commence work on the proposed operation"
by the prescribed deadline and "complete it with due diligence" was a question of law. The trial
court, however, concluded that the issue was not established as a matter of law and submitted the
issue to the jury by the following question:

 As to each of the wells in question, did Valence fail to comply with the provision of
Article VI. B. 2 of the Operating Agreement which states that "the party or parties
giving the notice and such other parties as shall elect to participate in the operation
shall, within sixty (60) days after the expiration of the notice period of thirty (30)
days . . . actually commence work on the proposed operation and complete it with
diligence?"


The jury answered "yes" as to each well. The trial court rendered judgment for Anadarko on the jury
verdict for actual damages, attorneys' fees, and prejudgment interest.

 Valence raises fifteen issues on appeal, which we group for discussion as follows:

I. Whether as a matter of law, Valence actually commenced work on the proposed operation before
the deadline and completed it with due diligence? (Issues 1, 2, 3, and 4); II. The trial court's failure
to give certain instructions and definitions to the jury. (Issues 6, 7, 8, 9, 10, 11, and 12); III. There
is insufficient evidence to support the jury's verdict. (Issue 14); IV. The trial court's failure to
exclude Owen Barnhill's testimony as to the generally accepted meaning of "commencement of
operations" in the oil and gas industry. (Issue 5); V. The trial court's failure to dismiss Anadarko's
suit for want of prosecution. (Issue 15); VI. The trial court's alleged error in awarding Anadarko
prejudgment interest. (Issue 13). For the reasons set out hereafter, we overrule all these issues and
affirm the trial court's judgment.

 Valence contends the trial court should have instructed a verdict or rendered judgment non
obstante veredicto in its favor because its compliance with Article VI.B.2 of the Joint Operating
Agreement was proven as a matter of law. There is no dispute as to what acts Valence performed
before the deadline. The dispositive question is whether, within the meaning of Article VI.B.2 those
acts constituted commencement of actual work on the proposed operation before the deadline that
was completed with due diligence.

 Valence did these things before the deadline: On December 10, 1999, an authorization for
expenditures was prepared. On January 1, 2000, a topographic map of locations was received. On
February 3, surveyor Jack Ward staked locations and took pictures of well sites. On February 18,
2000, a preliminary list of instruments regarding title was obtained. Between February 16 and March
8, 2000, several meetings were held to discuss locations and how to build on the locations. On
March 2 and 3, detailed cost and facility estimates were prepared for all wells. Preliminary run
sheets were prepared on March 3, and on March 16, 2000, the Texas Railroad Commission issued
drilling permits for all four wells. The deadline for commencing actual work on the proposed
operation was March 17, 2000. All other work by Valence on the proposed operation, including
building access roads, restaking the well locations, securing title opinions, signing drilling contracts,
and the actual beginning of drilling, was done after the deadline had passed.

 Actual drilling is not necessary in order to comply with an obligation to commence
operations for drilling as required by contractual provisions in many oil and gas leases and joint
operating agreements. Preparatory activities such as building access roads to the drill site, moving
tools and equipment onto the drill site, providing a water supply, and similar activities are usually
sufficient if they are performed with the bona fide intention to proceed with diligence to the
completion of the well. Dorsett v. Valence Operating Co., 111 S.W.3d 224, 230 (Tex.
App.--Texarkana 2003), rev'd on other grounds, 164 S.W.3d 656 (Tex. 2005); Petersen v. Robinson
Oil & Gas Co., 356 S.W.2d 217, 220 (Tex. Civ. App.--Houston 1962, no writ). If there is doubt
or controversy as to the intent of the party claiming to have commenced operations for drilling by
performing preparatory acts, the question is one of mixed law and fact and should be submitted to
the jury. Forney v. Ward, 25 Tex. Civ. App. 443, 62 S.W. 108 (1901); Dorsett v. Valence Operating
Co., 111 S.W.3d at 224, 231 n.5; Woods v. Bost, 26 S.W.2d 299, 303 (Tex. Civ. App.--Amarillo
1930, writ dism'd); Edgar v. Bost, 14 S.W.2d 364 (Tex. Civ. App.--Amarillo 1929, no writ); Heard
v. Pratt, 257 S.W. 660, 663 (Tex. Civ. App.--San Antonio 1923, writ dism'd); Moore v. West, 239
S.W. 710 (Tex. Civ. App.--San Antonio 1922, writ dism'd w.o.j.).

 The preliminary activities conducted by Valence in advance of the deadline consisted mostly
of acts that are sometimes characterized in the industry as "backroom preparations" and securing 
drilling permits, with no on-site activity except a preliminary staking of wells. These preliminary
activities were not sufficient to constitute, as a matter of law, the actual commencement of work on
the proposed operation within the meaning of Article VI.B.2 of the Joint Operating Agreement. The
trial court correctly so concluded and submitted to the jury the issue of Valence's compliance. See
Woods v. Bost, 26 S.W. at 303; see also Ridge Oil Co. v. Guinn Invs., Inc., 148 S.W.3d 143 (Tex.
2004).

 Valence challenges the sufficiency of the evidence to support the jury's finding that it failed
to comply with the requirements of Article VI.B.2. Evidence is legally sufficient if it would enable
reasonable and fair-minded persons to reach the verdict under review. City of Keller v. Wilson, 168
S.W.3d 802, 807 (Tex. 2005). In determining that question, we credit favorable evidence if a
reasonable fact-finder could do so, and we disregard contrary evidence unless a reasonable fact-finder could not. Id. at 823. In weighing a factual sufficiency challenge, we consider, weigh, and
examine all the evidence supporting the finding, and we set aside the verdict only if that evidence
is so weak that the verdict is clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986).

 There was considerable testimony at the trial from witnesses for Valence and for Anadarko
as to the meaning of the term "commencement of operations" as used in the oil and gas industry
generally in oil and gas leases, and specifically in joint operating agreements. Actions amounting
to commencement of operations, according to some testimony, can include preliminary acts such as
selecting well locations, preparing cost estimates, surveying the drill site, and other nonspecific acts
preparatory to the actual spudding of wells. On the other hand, there was testimony that
commencement of operations means actual preparing of the drill site, moving a drilling rig or other
equipment onto the drill site, or actually "moving dirt," in the words of some witnesses. Considering
all of the evidence, we conclude there is sufficient evidence to support the jury's verdict. The jury
could have found from the evidence that Valence's preliminary work was not such that showed a
bona fide intent to commence actual work on the proposed operation before the deadline and proceed
with diligence to the completion of the wells.

 Valence raises several issues contending that the trial court erred in refusing its requests to
submit various instructions and definitions to the jury. The requests included an instruction as to the
legal meaning of the pertinent Joint Operating Agreement provision, as well as special definitions
of "diligence," "bona fide intention," "reasonably prudent operator," and "good faith." An
instruction is proper if it will assist the jury in answering the questions submitted. Tex. R. Civ. P.
277; Elbaor v. Smith, 845 S.W.2d 240, 243 (Tex. 1992). A definition may properly be submitted
to the jury if a term used in the charge has a distinct legal meaning, or if it differs in meaning from
the usual and commonly accepted meaning. Brookshire Bros. v. Lewis, 997 S.W.2d 908 (Tex.
App.--Beaumont 1999, pet. denied). If the meaning that the parties intended to give to a term is a
question of fact for the jury, and there is conflicting evidence before the jury as to the meaning of
the term, it should not be defined, and the jury may decide the question based on its view of the
evidence. See, for example, Magnolia Petroleum Corp. v. Long, 126 Tex. 195, 86 S.W.2d 450,
455-56 (1935); Miller v. Watson, 257 S.W.2d 839, 841 (Tex. Civ. App.--Dallas 1953, writ ref'd
n.r.e.); Whitaker v. Haynes, 128 S.W.2d 532, 533-34 (Tex. Civ. App.--Beaumont 1939, writ dism'd,
judgm't corrected). The trial court's decision to refuse to submit a particular instruction or definition
is reviewed by an abuse of discretion standard. Shupe v. Lingafelter, 192 S.W.3d 577, 579 (Tex.
2006). A trial court abuses its discretion if it acts arbitrarily or without reference to guiding rules
and principles. Walker v. Packer, 827 S.W.2d 833, 840 (Tex. 1992). 

 Valence argues that the trial court erred in refusing to submit an instruction requested by
Valence on the key issue of whether Valence actually commenced work on a timely basis. The
requested instruction would have instructed the jury in connection with the meaning of "actually
commence work on the proposed operation":

 The terms of the provision in question must be considered as having been complied
with, no matter how slight may have been the commencement of any portion of the
work which was a necessary and indispensable part of the work required in drilling
a well or wells, if performed with such bona fide intention and with such diligence.


 Contract terms are given their plain, ordinary, and generally accepted meanings unless the
contract itself shows them to be used in a technical or different sense. Valence Operating Co. v.
Dorsett, 164 S.W.3d at 662. A trial court must submit "such instructions and definitions as shall be
proper to enable the jury to render a verdict." Tex. R. Civ. P. 277; see Union Pac. R.R. Co. v.
Williams, 85 S.W.3d 162, 166 (Tex. 2002). A proper jury instruction is one that assists the jury and
is legally correct. Transcon. Ins. Co. v. Crump, 274 S.W.3d 86, 99 (Tex. App.--Houston [14th
Dist.] 2008, pet. granted); Town of Flower Mound v. Teague, 111 S.W.3d 742, 759 (Tex. App.--Fort
Worth 2003, pet. denied).

 If the jury charge is legally correct, a trial court has broad discretion whether to submit
questions, definitions, and instructions to the jury. Hyundai Motor Co. v. Rodriguez, 995 S.W.2d
661, 664 (Tex. 1999); see Ford Motor Co. v. Ledesma, 242 S.W.3d 32, 41 (Tex. 2007) (charge
omitting indispensable element of proof was legally incorrect). We review asserted jury-charge
errors for abuse of discretion. Owens-Corning Fiberglas Corp. v. Martin, 942 S.W.2d 712, 721-22
(Tex. App.--Dallas 1997, no writ). Trial courts have considerably more discretion in submitting
jury instructions than in submitting jury questions. Harris v. Harris, 765 S.W.2d 798, 801 (Tex.
App.--Houston [14th Dist.] 1992, writ denied). If, in light of the entire charge, a particular
instruction would exaggerate, minimize, or withdraw from the jury's consideration some pertinent
evidence, that instruction would be improper. Moody v. EMC Servs., Inc., 828 S.W.2d 237, 244
(Tex. App.--Houston [14th Dist.] 1992, writ denied); Lively Exploration Co. v. Valero Transmission
Co., 751 S.W.2d 649, 653 (Tex. App.--San Antonio 1988, writ denied).

 We find that the "no matter how slight" language in Valence's proposed instruction is an
exaggeration or minimization of the evidence. Consequently, the trial court at least had the discretion
to deny the requested instruction. See, e.g., R.E. Taylor Syndicate v. James, 243 S.W. 1105, 1109
(Tex. Civ. App.--Amarillo 1922, writ ref'd) (merely leaving derrick and other materials on site does
not establish diligent prosecution of drilling). We also note that no authority cited by Valence
mandates or validates the proposed instruction.

 Also, because Valence and Anadarko agreed at trial that the pertinent terms of the Joint
Operating Agreement should be interpreted according to their plain, commonly understood
meanings, and because there was considerable testimony before the jury as to the meaning of the
words defining Valence's obligations under Article VI.B.2 of the Joint Operating Agreement, we
conclude that the trial court did not abuse its discretion in refusing to submit Valence's requested
instructions and definitions.

 Valence also contends the trial court committed reversible error in refusing to exclude the
testimony of Anadarko's witness, Barnhill. Anadarko produced Barnhill to testify to the common
understanding of the phrase "commence work on a proposed operation" in the oil and gas industry. 
Valence filed a "Daubert" motion, contending that Barnhill was not qualified to give his testimony,
and that his testimony was unreliable because it was not based on scientific principles and accepted
scientific research. See Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).

 Barnhill is a certified professional landman who has worked in the oil and gas industry for
over thirty-two years. He served as an instructor for the American Association of Professional
Landmen teaching landmen about oil and gas leases, joint operating agreements and related
agreements, as well as standard practices in the oil and gas business. Barnhill also taught a review
course for the professional landman certification examination addressing similar language to that at
issue in this case. Barnhill reviewed all joint operating agreements during his employment with
Getty Oil Company, and actually prepared some of those agreements. The land department that he
supervised proposed wells and was involved in the drilling and operation of wells. He testified he
was well acquainted with the common understanding of "commencement of operation" requirements
of oil and gas leases and joint operating agreements. Valence argues that, because Barnhill is a
landman rather than a driller, he was not qualified to give testimony as to the meaning of "commence
operations" as used in the oil and gas business, and his testimony was unreliable because it was not
based on accepted and tested scientific theory or actual experience. We find, however, that the trial
court did not abuse its discretion in allowing Barnhill's testimony. Barnhill's testimony was not
about science or scientific causation, as involved in Daubert and similar cases, but rather was about
actual practice and the general understanding in the oil and gas industry as to what constitutes
commencement of operations. Even though Barnhill was a landman and not a driller, he was
qualified to testify about the practices in the industry with which he was familiar. Because the issue
of Valence's compliance with the Joint Operating Agreement's requirement of commencement of
operations was submitted to the jury, this kind of evidence was relevant and appropriate. See Forney
v. Ward, 62 S.W. 108, where the court held that the issue of the meaning of "commencement of
operations" should be considered with "the testimony . . . as to the general understanding among
persons engaged in the business of boring wells as to when a well was begun." Several other
witnesses in this case, both for Valence and for Anadarko, gave testimony as to the common
understanding and practices in the industry concerning the meaning of "commencement of
operations."

 Valence complains because the trial court refused to dismiss Anadarko's suit for want of
prosecution. The decision to grant or deny a motion to dismiss a suit for want of prosecution is
within the trial court's discretion. We review the trial court's denial of a motion to dismiss for want
of prosecution by an abuse of discretion standard. In re Marriage of Seals, 83 S.W.3d 870, 873-74
(Tex. App.--Texarkana 2002, no pet.). In considering whether to dismiss a case for want of
prosecution, the trial court should consider the entire history of the case, including: the length of
time the case has been on file, the extent of activity in the case, whether a trial setting has been
requested, and whether a reasonable excuse for delay exists. Id. at 874. This suit was filed in
February 2001. Valence filed a motion to dismiss for want of prosecution in May 2006. Anadarko
served supplemental requests for document production in February 2004, but took no further action
in the case after that date until May 2006 and did not request a trial setting. No deposition had been
taken as of May of 2006. There was no action in the case between February 2004 and May 3, 2006. 
Anadarko argues that the reason for its delay was this Court's issuance of the opinion in Dorsett v.
Valence Operating Company, in which we discussed what actions may constitute "actual
commencement of work." 111 S.W.3d at 229-30. The Texas Supreme Court granted review in that
case and did not issue its opinion in that appeal until May 20, 2005. Anadarko says it anticipated
that the Texas Supreme Court's ruling in the Dorsett appeal would resolve this dispute and thus
avoid the need for each party to incur the expense of going to trial in this case. The Texas Supreme
Court's opinion, however, did not resolve the question of what constitutes commencement of
operations for drilling. Anadarko asserts that, when the Texas Supreme Court's opinion was issued,
it began to determine what discovery would be needed, and ten months after the mandate was issued,
it contacted Valence to set up a schedule for discovery. The trial was held in November 2008.

 The purpose of allowing a trial court to dismiss a suit for want of prosecution is to provide
a penalty when a party seeks to take advantage over its opponent by deliberate neglect and delay and
a reluctance to have the merits of the case judged in a trial. The purpose of the Texas Rules of Civil
Procedure is to "obtain a fair, just, and equitable adjudication of rights under established principles
of law." Tex. R. Civ. P. 1. A dismissal for want of prosecution disposes of a case without deciding
the substantive issues of the controversy. Consequently, a just resolution of the case usually requires
a trial on the merits, rather than a dismissal. S.W. Airlines v. Jaeger, 867 S.W.2d 824, 836 (Tex.
App.--El Paso 1993, writ denied); Olin Corp. v. Coastal Water Co., 849 S.W.2d 852, 858 (Tex.
App.--Houston [1st Dist.] 1993, no writ). Considering these principles and the circumstances of
this case, we conclude that the trial court did not abuse its discretion in overruling the motion to
dismiss for want of prosecution.

 Valence contends that Anadarko is not entitled to prejudgment interest because this suit
involves a title dispute. See Tex. Nat. Res. Code Ann. § 91.402(b)(1)(2) (Vernon Supp. 2009), §
91.403(b) (Vernon 2001). The Texas Natural Resources Code requires one who is obligated to pay
oil and gas revenues to another to pay interest to the payee if the required payments are not made
within certain time limits. Tex. Nat. Res. Code Ann. § 91.402(a) (Vernon Supp. 2009). That
requirement does not apply, however, if a dispute concerning title exists that would affect the
distribution of payments. See Tex. Nat. Res. Code Ann. § 91.403(b). This action is for breach of
contract. Both parties to this action recognize that a temporary change in the entitlement to certain
payments of oil and gas revenues may occur if a party fails to comply with Article VI.B.2 of the Joint
Operating Agreement. Neither party disputes the other party's title to the oil and gas payments that
will be paid according to the compliance or noncompliance with the terms of the Joint Operating
Agreement. Therefore, this action does not involve a legitimate title dispute as contemplated by the
Texas Natural Resources Code, and the trial court did not err in awarding prejudgment interest.

 Valence also disputes the rate of the prejudgment interest awarded by the judgment, arguing
there is no evidence to support a six percent rate. This contention was not raised by Valence in the
trial court, however, either in its motion for new trial or in the hearing on the motion for new trial,
where Anadarko argued for a six percent rate. Thus, Valence's complaint has been waived. Tex.
R. App. P. 33.1; Larrumbide v. Doctors' Health Facilities, 734 S.W.2d 685 (Tex. App.--Dallas
1987, writ denied).

 



 For all the reasons heretofore stated, we affirm the trial court's judgment.




 William J. Cornelius

 Justice*


*Chief Justice, Retired, Sitting by Assignment


Date Submitted: October 21, 2009

Date Decided: January 15, 2010