## CONSUMERS GAS TRUST COMPANY *v.* WORTH.

[No. 20,319.   Filed June 21, 1904.]

LANDLORD AND TENANT.— *Gas and Oil Lease.*—Where a gas and oil lease contract was for such period of time as the lessee should pay the lessor a stipulated sum of money annually, or as much longer as oil or gas should be found in profitable quantities, the acceptance in advance by the lessor of the annual payment, as specified in the contract of lease, was a waiver of performance in developing the property for that year.  *pp. 147, 148.*

SAME.—*Development of Property.*—If a gas lease is for such time as the lessee shall pay a specified annual sum to the lessor in advance, or until gas shall be found in paying quantities, and the lessor refuses at the beginning of the year to accept the payment, then the lessor is bound to develop the premises within a reasonable time.  *pp. 148, 149.*

QUIETING TITLE.— *Gas and Oil Lease.*—Where a gas and oil lease provides that the lessee may pay lessor a specified sum annually in advance, or until gas shall be found in paying quantities, and the lessor refuses to accept such annual payment, and declares the lease forfeited, the lessor can not maintain an action to quiet his title for lack of diligence on the part of the lessee in failing to begin such development proceedings.  *p. 149.*

LANDLORD AND TENANT.—*Lease.—Consideration.—Acceptance. — Waiver.*— Where a gas lease provides for an annual payment of a certain consideration, and the lessor accepts such annual payment from the lessee from year to year, the lessor must be deemed to have consented to the lessee's delay or default in beginning to operate in the development of the property for such year.  *p. 149.*

From Superior Court of Madison County; *H. C. Ryan,* Judge.

Action by Elizabeth Worth against Consumers Gas Trust Company.  From a judgment for plaintiff, the defendant appeals.  Transferred from Appellate Court under §1337u Burns 1901.  *Reversed.*

W. H. H. Miller, J. B. Elam, J. W. Fesler, S. D. Miller and J. W. Lovett, for appellant.

A. H. Jones, for appellee.

JORDAN, C. J.—Appellee instituted this action on March 20, 1902. The complaint consists of two paragraphs, the first being the statutory form to quiet title to certain described real estate, containing in all fifty-four acres, situate in Madison county, Indiana. By the second paragraph it is sought to have declared null and void a certain written contract or lease relating to the same premises. This contract, it is alleged, was executed by appellee and her husband to appellant on the 3d day of March, 1897, and recorded in the recorder's office of said county, and that thereby she granted to appellant the right to enter upon the real estate described for the purpose of drilling gas and oil wells thereon. A copy of this instrument is filed as an exhibit with the second paragraph. Appellant unsuccessfully demurred to each paragraph of the complaint, and thereafter filed an answer to each of them. In each paragraph of the answer it embodied and set out the same lease, or contract, which appellee had filed as an exhibit with the second paragraph of the complaint.

The introductory part of the instrument in question is as follows: "This agreement made and entered into this 3d day of March, A. D. 1897, by and between James R. Worth and Elizabeth Worth, of the county of Madison, State of Indiana, of the first part, and the Consumers Gas Trust Company of Indianapolis, Indiana, party of the second part, witnesseth," etc. The terms and provisions thereof may be summarized as follows: A grant of the lands in question by appellee and her husband to appellant, with the exclusive right of drilling and operating for petroleum and gas, and transporting such products through and over said lands, including also a grant of the following rights: To lay, maintain, and operate its main pipe-lines and other lines of pipe and telephone, in its discretion, as

may be necessary. for the purposes of the contract. To excavate for water, and use the same to supply engines, etc. Right of way over the premises, and to erect, maintain, and operate such buildings as are necessary to the full enjoyment of the grant. The right at any time to remove any buildings, machinery, fixtures, pipe, or pipe-lines placed on the premises. All lines, pipes, etc., to be so constructed as not to interfere with agricultural purposes, and all damages to be adjusted in the month of August. Appellant to have and hold the premises for the term of six months from date, and as much longer as oil or gas shall be found in sufficient quantities to justify marketing the same, in the judgment of appellant, or the sums of money agreed to be paid herein are kept paid by appellant. Appellant to pay to appellee compensation at the rate of fifty cents per acre for each year in advance for said lands until the completion by appellant of a well upon said land. After the completion of this well, if it shall, in the opinion of appellant, produce gas sufficient to justify it in marketing the same, it will pay appellee $100 per annum for each well on said land so long as it produces a marketable quantity of gas. Said amount for each well to be due January 1, and July 1, and payable within ten days of maturity by depositing the same in the Citizens Bank at Summitville, subject to the order of appellee, or as directed by her. Any failure on the part of appellant to pay as provided renders the contract null and void, and the rights of both parties therein shall cease and terminate, except appellant shall have the right without paying further consideration to operate, repair, replace, or remove any pipe-line upon the premises. Appellant agrees to give appellee one-eighth part of all petroleum or rock-oil produced on the premises. No timber is to be cut or destroyed without the consent of appellee, and all damages to growing crops to be paid by appellant. No well to be drilled within three hundred feet of the buildings on the premises. So long as gas-wells are

maintained or pipe-lines operated on said premises, appellee is to have a sufficient supply of gas therefrom, without charge, for use in her residence upon the premises, and also to be furnished gas for two jumbo burners for lawn purposes. In case appellant abandons a well, it is to be packed and tubed as provided. The surrender and cancelation of the contract shall not cancel the right of appellant to continue to replace, repair, and maintain its pipes and telephone lines through the lands. Contract to inure to the benefit of heirs, executors, administrators, and assigns.

Aside from the contract in question, the first paragraph of the answer alleges: (a) That, pursuant to said contract, on the 3d day of March, 1897, the defendant paid to the plaintiff $27; being the amount named as the acreage rental mentioned in said contract. On each succeeding 3d day of March until the 3d day of March, 1902, it is alleged that a payment of a like amount was made by the defendant to plaintiff for the same purpose. On said 3d day of March, 1902, defendant tendered a like sum to plaintiff, which she refused to accept or receive, solely upon the ground that she then and there had the right to terminate the contract in question. On her refusal to accept the money so tendered, the defendant deposited said sum of $27 with the Citizens Bank at Summitville, where it has remained ever since to the credit of the plaintiff. (b) On the said 3d day of March, 1902, the plaintiff notified the defendant, in writing, that she proposed to terminate the contract at that time. (c) Defendant denies that such contract has ever been terminated as provided therein, or in any other manner, and denies that said payment of $27 was the sole consideration for the option and right of defendant to drill on said premises for any one year, but avers that said sum was a part of the total consideration for all rights in the property granted by the contract. (d) That the several payments were made by defendant and accepted by plaintiff in full satisfaction for delay in drilling wells

or prosecuting the work of developing said land down to the 3d day of March, 1902. (e) Defendant avers that it has never, in its judgment, been ascertained that oil or gas can not be found upon the said premises in a quantity to justify the marketing of the same, nor that having developed such products they ceased thereafter to exist in paying quantities. (f) It is averred that the contract is still in full force, and defendant alleges that it has done and performed, and been ready to do and perform, all, and singular, the duties and obligations imposed upon it by and under said contract, and that said agreement was the only agreement or contract, lease or license, ever entered into between plaintiff and this defendant touching the premises. It denies that the delay in taking possession of the premises and operating for gas or oil has been unreasonable.

The second paragraph of the answer, which is addressed to the second paragraph of the complaint, is substantially the same as the first paragraph. Each paragraph of the answer may be said to constitute a partial answer to the complaint, and thereon appellant bases or limits its cause of defense to the contract therein contained so as to conform to the holding in *Messick* v. *Midland R. Co.* (1890), 128 Ind. 81. A demurrer was sustained to each paragraph of the answer, and upon appellant declining further to plead, the court rendered judgment quieting appellee's title to the real estate in dispute, and declaring the contract referred to in the second paragraph of the complaint, and set up in appellant's answer, to be null and void.

Counsel for appellant contend that the court erred in holding the second paragraph of complaint sufficient on demurrer, and in sustaining the demurrer to each paragraph of answer. It is insisted by counsel for appellant that the second paragraph of complaint is bad. We, however, pass this question, and consider the point presented by the facts averred and set out in the answer. The written contract or instrument in controversy herein is substantially of the

same tenor and effect as the one involved and construed by this court in each of the following cases: *Consumers Gas Trust Co.* v. *Littler* (1904), 162 Ind. 320; *Consumers Gas Trust Co.* v. *Crystal Window Glass Co.* (1904), *post,* 190. The material facts alleged in the answer virtually raise the same question as did those in the Littler case, *supra.* The holdings of this court in that appeal must therefore rule in this case, unless it can be satisfactorily shown that the decision therein is wrong.

The contract in question can not be regarded as merely awarding a mere license to appellant which may be terminated at the end of any year at the will of either of the parties, but, as its terms purport, it is a grant upon a good consideration by the appellee and her husband to appellant for a limited purpose, viz., the exclusive right of drilling or sinking wells upon the premises described, and operating thereon for petroleum and gas, and transporting such products over and through said tract of land, together with the right to lay, maintain, and operate its main pipeline, or other lines of pipe and telephone, as in the judgment of appellant may become necessary and proper; also the right to excavate for water, and to use the same to operate the necessary engines in conducting said business; the right of way over said premises, and the right to erect, maintain, and operate such buildings and machinery upon said lands as may be necessary to the full enjoyment of all the rights granted to appellant.

The instrument in controversy grants to appellant the right to "have and hold the premises for the said purposes only during the full term of six months from the date thereof, and as much longer as gas or oil shall be found in such quantities as to justify marketing the same, in the judgment of appellant, or the sums agreed to be paid herein are kept paid." By its express terms, appellant is obligated to pay to appellee, as compensation, fifty cents per acre in advance each year, for said lands, until the completion of

a well thereon, as thereinafter mentioned in the contract. It is further provided that from and after the completion of the well which shall, in appellant's opinion, produce gas in sufficient quantities to justify it in marketing the same, it is to pay appellee $100 per annum for each well upon said land, so long, as in appellant's opinion, said well produces a marketable quantity of gas.

It is evident that the contracting parties contemplated that the first well to be drilled by appellant on the premises was to be a "test well." By this well it appears the question as to whether gas or petroleum existed under said lands in sufficient quantities to warrant the marketing thereof was to be tested or determined. If the test well failed to disclose the presence of gas or oil in quantities sufficient to justify appellant in marketing such product, then and in that event it would appear that the parties by the contract intended that appellant should not be required to proceed to explore further by drilling additional wells on the land. No time is expressly prescribed when this well is to be completed, but, until the completion thereof, appellant, under the express terms of the contract, was bound and obligated to pay to appellee each year in advance, for its delay, the stipulated price of fifty cents per acre, or a total of $27 for the fifty-four acres of land. The answer discloses that appellant on March 3, 1897, the date upon which the contract was executed, paid $27 to appellee, and paid a like sum to her on the 3d day of March of each succeeding year until March 3, 1902. On this last date a like amount was tendered, but appellee declined to receive or accept it, for the sole reason that she asserted the right at that time to terminate the contract. It is alleged that on said 3d day of March, 1902, she gave appellant notice that she proposed to terminate the contract on that day, and on the 20th day of the same month she commenced this action.

That the facts, as alleged and set out in the answer, are sufficient to defeat appellee from quieting her title to the

premises, as against the appellant's rights under the contract, or from maintaining her action upon the second paragraph of the complaint, is settled, and properly so, by the holding in *Consumers Gas Trust Co.* v. *Littler* (1904), 162 Ind. 320. In that appeal this court said: "When the contract was entered into it was problematical whether either gas or oil was to be found under appellee's land. He then, under the contract, had his election whether he would require, by claiming a forfeiture, the existence or nonexistence of gas or oil under his premises to be determined within a reasonable time by drilling a well, or whether he would prefer delay and the $80 per annum, rather than take his chance on the finding of gas or oil, and the possible total loss of any further revenue from the prospect. If he chose the former, under the vague and uncertain terms of the contract, equity required him to give appellant reasonable notice of his intention, or, what would be equivalent to such notice, refuse to assent to or accept a consideration for a postponement beyond a reasonable time.   *   *   * If he chose the latter—as he did—the acceptance of the $40 at the time of the contract was a waiver upon a valid consideration of performance for one year. The acceptance of a like sum at the beginning of the second year was a like waiver for the second year, and likewise to the end of the five years for which such payments were made."

The payment by appellant to appellee in advance of a stipulated price for each year of its delay in exploring or developing the land for gas or oil was a matter about which the parties had a right to agree and regulate by their contract. *Ray* v. *Western, etc., Gas Co.* (1891), 138 Pa. St. 576, 20 Atl. 1065, 21 Am. St. 922, 12 L. R. A. 290.

Upon the refusal by appellee to receive the money on March 3, 1902, she, instead of notifying appellant to proceed to operate under the contract, upon the contrary notified it that the same was terminated. She seems to have assumed that by reason of appellant's delay to develop the

lands during the period of time which elapsed between March 3, 1897, and March 3, 1902, she had a right under the contract to declare a forfeiture thereof, on account of such default to explore during said period, regardless of the fact that she had indulged appellant in its delay in the matter, and had consented thereto by accepting the stipulated price in advance for each year's delay. As to whether appellant should have commenced operations between March 3, 1902, and the day on which this action was commenced, is, under the circumstances, not a question in the case, for certainly appellee, after notifying appellant company that the contract was at an end, was not in a position to insist or expect appellant to expend money in drilling wells and developing the lands under a contract which she had declared to be forfeited. As no particular time was fixed in the contract for appellant to begin to explore the land for the purposes intended, therefore, had appellee refused to accept the money in question at the beginning of the first year, or at the commencement of any succeeding year thereafter, appellant, under the circumstances, would have been bound to develop the premises within a reasonable time thereafter, and its failure to do so would have afforded appellee, at her option, the right to declare a forfeiture of the contract. *Island Coal Co.* v. *Combs* (1899), 152 Ind. 379; *Gadbury* v. *Ohio, etc., Gas Co.* (1904), 162 Ind. 9, 62 L. R. A. 895.

As said in *Island Coal Co.* v. *Combs, supra:* "What may be regarded as a reasonable time depends, however, upon the circumstances of the particular case." By accepting the money on March 3, 1897, and from year to year thereafter, appellee must be deemed to have consented to appellant's delay or default in beginning to operate under the contract. Therefore, under the facts as shown, she occupied the same position on March 3, 1902, as she would have occupied had she refused to accept payment of the money on March 3, 1897.

The cases cited by appellee's counsel involved contracts and facts which are materially different from the contract and facts in this case, consequently they are not controlling upon the paramount question as herein involved. After a further and careful consideration we adhere to the decisions in *Consumers Gas Trust Co.* v. *Littler* (1904), 162 Ind. 320, and *Consumers Gas Trust Co.* v. *Crystal Window Glass Co.* (1904), *post,* 190.

For the error of the court in sustaining the demurrer to the answer, the judgment is reversed, and the cause remanded with instructions to the lower court to overrule the demurrer to each paragraph of the answer, and for further proceedings not inconsistent with this opinion.