LAND, J.
In these two cases, the plaintiff sued to annul and cancel two certain oil and gas leases, of date February 24, 1909, one by the Huron Land Company and Clarence Ellerbe, and the other by A. H. Leonard, to the Busch-Everett Company. Leonard subsequently acquired the titles of the Huron Land Company and of Ellerbe to the lands leased by them to the defendant.
The lease from the Huron Land Company and Ellerbe included 5,226 acres, more or less, and the initial consideration was the sum of $1,306, or 25 cents per acre. The lease was made on the following conditions:
“In case operations for either the drilling of a well for oil or gas is not commenced and prosecuted with due diligence within one year from this date, then this grant shall immediately become null and void, as to both parties; Provided that the second party may prevent such forfeiture from quarter to quarter for five years by paying the first party the sum of $326.50 per quarter until such well is commenced, and it is agreed that the completion of such a well shall operate as full liquidation of all rentals under this provision during the remainder of the term of this lease, which payment can be made at Commercial National Bank of Shreveport or payable direct to party of the first part.”
The petition alleges that the defendant made payment up to and covering the quarter ending with the 23d day of August, 1913, *1102 but that petitioner being unwilling to continue said optional agreement, some days before said date, by letter addressed to and received by the Busch-Everett Company, notified that company that he owned the land described in said agreement, that said agreement was not binding on him, and that he would not receive any money from them. The petitioner further alleges that he, the Hurón Land Company, and the said Ellerbe, on August 15, 1913, notified the Commercial National Bank not to receive from them or any of them any money from the Busch-Everett Company.
The petition further alleges that the said company a few days later made a quarterly deposit in said bank pursuant to'the provisions and terms of the contract of date February 24, 1909, and that thereupon the Huron Land Company notified the defendant that said deposit would not be accepted or recognized.
Plaintiff in his petition contends that the failure of the defendant to commence drilling operations within the year rendered the agreement immediately null and void as to all parties; that the agreement imposed no legal obligation on the defendant company to drill on said tracts of land or to pay rentals; and that as the agreement was optional on the part of the lessee it was also optional on the part of the lessors.
Plaintiff alleges and prays for judgment against the defendant for $10,000 as damages, and for cancellation, etc., of the lease, and that the defendant be enjoined from entering upon said lands and drilling thereon.
Defendant avers that the payments referred to in the petition- extended said lease up to and including August 24, 1912, and that on August 21, 1912, defendant commenced operations on said property for drilling a well for oil and gas, and for that purpose a derrick and drilling rig had been erected thereon.
Defendant averred that prior to the service of citation in this suit, it had transferred said lease to the Pasadena Petroleum Company, and the said transferee intervened in the suit, alleging, among other things:
“That it continued the work begun by the defendant, and was engaged in prosecuting the suit in good faith under said lease when this suit was filed.”
Plaintiff filed a supplemental petition, in which he alleged the defendant and the intervener had failed to make any payment or tender of payment for the extension of said agreement for the quarter commencing November 24, 1913, and February 24, 1914, and that as a result the agreement by its terms had been canceled and ended. Defendant answered that the plaintiff by his suit had prevented the carrying out of the lease and was estopped to complain of the nonpayment of the rentals, if any were owing after the defendant had commenced operations on the premises, and by formal refusal to accept rentals had waived any tender thereof.
The judgment below was in favor of the defendant, and the plaintiff has appealed.
The defendant made a legal tender to the Commercial National Bank of the rental for the quarter commencing on August 24, 1913. The bank did not accept this tender, because it had been instructed not to do so by the lessors of the defendant.
It is admitted that on August 24, 1913, the defendant staked out a location for a derrick on the leased premises, and that on August 25, 1913, the Pasadena Oil Company hauled some timber or lumber to the said location, and thereon constructed a derrick; since which nothing further has been done there. This suit was filed on August 26, 1913.
[1] The only question of law raised in the petition is whether the lessee had the legal right, as stipulated, to prevent the forfeiture of the contract from quarter to quarter, for *1104 five years, by paying a certain sum per quarter untii an oil or gas well should be commenced. This question was thoroughly considered by this court in the recent case of Saunders v. Busch-Everett Company, 138 La. 1049, 71 South. 153.
The oil and gas-lease in controversy in that suit contains the same condition, as to the prevention of forfeiture by payments, as the leases now before this court. The law of the Saunder’s Case 'is succinctly stated in the syllabus as follows:
“A contract whereby the owner of land grants to another, in consideration of payments, made and to be made, of certain agreed sums of money and other considerations which are to arise in a certain contingency, his right, or option, to drill for oil or gas within a year, and to extend the time thus granted, quarter by quarter, until it reaches a limit of five years, contains no potestative Condition by reason of its failure to impose upon the grantee any obligation to drill, since it is not in the contemplation of the contract that he should drill, unless he so elects. The purpose is to confer the right to drill without imposing the obligation, and there is nothing in that purpose or in the nature of the contract which contravenes any law of this state.”
[2] Plaintiff by refusing to accept the tender of payment for the quarter commencing May 24, 1913, and by instituting these two suits to annul and cancel the said leases, and to enjoin the defendant from entering on the premises, and to recover a large amount of damages because of the registry of said leases and the claims of the defendant thereunder, repudiated said agreements as naked pacts, creating no legal obligation whatever on either party. Where the plaintiff notified the defendant that he would not accept any more quarterly payments, and had elected to terminate the lease agreements, he put himself in default, and was thereafter in no position to put defendant in default. Sitman & Burton v. Lindsey, 123 La. 53, 48 South. 646. The institution and pendency of the suits, based as they are on the alleged nonexistence of any obligation on the part of either party to perform, or accept performance, of the lease agreements, estops plaintiff from urging nonperformance of the agreements, on the part of the defendant. An agreement cannot be a nudum pactum, and at the same time create a legal obligation to perform. If the leases are valid, the plaintiff has been in default since May, 1913, and is still in default.
The second suit involves the same issues, and the facts are not materially different.
We think that the judgments below are correct, but that the plaintiff’s right to require the sinking of wells on the leased premises should be reserved.
It is therefore ordered that the judgment appealed from be affirmed, reserving plaintiff’s right to require the sinking of wells on the leased premises as stipulated in the contracts, within a reasonable time.