O’NIELL, J.
This suit was brought against the widow and heirs of Willis Logan, who are the landowners and lessors, and against the Atlas Oil Company, as lessee, to annul a mining lease made by the Logans to the! Atlas Oil Company, dated the 7th of May, 1918, on the W. % of N. E. % of section 2(5, in T.. 21 N., K. 15 W., containing 80 acres. Plaintiffs are the transferees of the mineral rights acquired by R. W. Norris under a mining lease from the Logans, dated the 4th of October, 1917. !
The Richardson Oil Company, one of the three plaintiffs, bought from Norris the lease on the south half of the 80 acres on the 26th of October, 1917, and C. D. Keen and R. W. Woolf, the other plaintiffs, bought from Norris the lease on the north half of the 80 acres on the 27th of November. 1917.
The defendants contended, in answer to the suit, that Norr'is was obligated by the terms of the lease dated the 4th of October,
1917, either to commence drilling a well on 'the land within six months from the date of the lease or to pay the lessors $200, that is, $2.50 per acre, before the expiration of six months from the date of the lease. Defendants contended, therefore, that whatever rights Norris had acquired by the lease dated the 4th of October, 1917, had been forfeited when the Atlas Oil Company leased the land from the Logans on the 7th of May,
1918, because, notwithstanding six months and three days had gone by, Norris or his assigns had neither commenced drilling nor offered to pay the $200.
The district judge was of the opinion that the stipulation in the lease to Norris that he. should pay a further consideration of j $2.50 per acre if drilling operations were not ] commenced within six months did not require the lessee to pay the $2.50 per acre before the expiration of the six-month period, to prevent a forfeiture or annulment of the lease. That being the only isssue in the case, judgment was rendered in favor of the plaintiffs, annulling the lease to the Atlas Oil Company, dated the 7th of May, 1918, and declaring the lease .under which the plaintiffs claim the mineral rights, dated the 4th of October, 1917, in full force and effect. The defendants prosecute this appeal.
It wms admitted, on the trial of the case, that plaintiffs tendered the $200 to the lessors on the 15th of May, 1918; that the lessors refused to accept the payment, saying that the lease to Norris had been forfeited by his failure to pay the $200 before or on the 4th of May, 1918. It was also admitted that plaintiffs then deposited the $200 in the bank in which the lease provided the money should have been deposited. And it was admitted that no demand had ever been made for the payment of the $200.
Appellants’ case depends upon an interpretation of the following language in the lease under which plaintiffs claim the mineral rights, viz.:
“That we, * * * parties of the first part, in consideration of the sum of twelve hundred dollars paid by R. W, Norris, party of the second part, the receipt of which is hereby acknowledged, and a further consideration of two and 50/100 dollars per acre to be paid if drilling operations are not commenced within six months or this lease become null and void, and the further consideration hereinafter mentioned, have granted, bargained, sold and conveyed unto the party of the second part,” etc.
[1] The question presented is whether the further consideration, $2.50 per acre, to be paid if drilling operations were not commenced within six months, had to be paid within the six-month period, to prevent the léase from becoming null and void. Our opinion is, as was that of the district judge, that the $200, or $2.50 per acre, was not *83 due or demandable unless or until the plaintiffs had failed to commence drilling operations within the six months. The $200 was therefore not due or demandable until the six months had expired. The lessee had the privilege of saving the $200 by commencing drilling operations at any time before the expiration of the six months.
The clause in question must be construed with reference to the other clauses of the contract fixing the time within which drilling operations should commence or further payments should be made by the lessee to prevent a forfeiture of the lease. There is a subsequent clause in the contract declaring that, if operations for the drilling of a well for oil or gas were not commenced within one year from the date of the contract and prosecuted with due diligence, the grant would then become ipso facto null and void; provided, however, that the lessee might prevent a forfeiture by paying in advance $1,200 for a continuance of the lease for an additional period of one year, etc.
[2] What the lessee acquired, in consideration of the $1,200 which he paid when he signed the contract, was (1) Uio j-jgui. vim-out further consideration, to commence drilling operations within six months from the date of the contract; (2) the right, on payment of $200 more, to commence drilling operations within the second period of six months from the date of the contract; and (S) the right, on payment of $1,200 more within twelve months from the date of the contract, to commence drilling operations within the second period of twelve months from the date of the contract, etc. In other words, the agreement was that the lessee should pay $1,400 for the privilege of commencing drilling operations within twelve months from the date of the contract, or $1,200 for the privilege of commencing drilling operations within six months from the date of the contract. The $1,200 was paid in cash when the contract was signed. No time was stipulated for the payment of the additional $200. It was not due or payable at all if the lessee availed himself of the privilege of commencing drilling operations within six months from the date of the contract. Therefore it was not due or payable unless and until the lessee had.failed to avail himself of his privilege of commencing drilling operations within six months from the date of the contract. At the expiration of the six months the lessee owed the lessors $200 for having failed to commence drilling operations within the 'six months. A debt that is not payable on a‘specified date is payable on demand, and the debtor is not in default until a demand for payment has been made. If the lessee had obligated himself to pay the $200 to lirevent a forfeiture of the lease at the expiration of six months, the case would be different.
We agree with the district judge that the tender and deposit of the $200 made on the eleventh day after the expiration of the six-month period, and before any demand for payment had been made, was not too late.
[3] The defendants, in answer to the suit, admitted plaintiffs’ allegation that they (the defendants) had refused to permit and would not permit the plaintiffs to commence operations for the drilling of a well on the land in contest. The district judge, therefore, in response to a prayer in plaintiffs’ petition, decreed that the time within which the plaintiffs were required to begin drilling operations, or pay $1,200 per annum for a continuance of the lease, was suspended from the 7th of May, 1918, the date of the lease made by the Logans to the Atlas Oil Company, and that the time would remain suspended until final determination of this suit. The decree is in accord with the doctrine that a party who is bound by contract to perform an obligation for the benefit of another party is not in default for nonperformance of the obligation so long as the other party refuses to permit a *85 performance of the obligation. See Landry v. Peytavin, 7 Mart. (N. S.) 165; State v. Burgess, 23 La. Ann. 225; Bergen v. City of New Orleans, 35 La. Ann. 523; Romero & Bayard v. Newman, 50 La. Ann. 81, 23 South. 493; De La Vergne & Co. v. N. O. & Western R. R. CO., 51 La. Ann. 1733, 26 South. 455; Lozes v. Segura Sugar Co., 52 La. Ann. 1844, 28 South. 249; Lloyd v. Dickson, 116 La. 90, 40 South. 542; Leonard v. Busch-Everett Co., 139 La. 1099, 72 South. 749.
The judgment appealed from is affirmed, at appellants’ cost.
DAWKINS, J., dissents and will hand down reasons. See 86 South. 258.