## EDGAR et al. v. BOST et ux. (No. 3164.)

Court of Civil Appeals of Texas. Amarillo. Jan. 30, 1929.

On Rehearing Feb. 27, 1929.

W. T. Brothers and Shannon, Ochsner & Pheiffer, all of Amarillo, for appellants.

Carrigan, Britain, Morgan & King, of Amarillo, for appellees.

RANDOLPH, J. This suit was originally filed in the district court of Hutchinson coun-

ty, on January 26, 1928, by John Q. Bost and his wife, as plaintiffs, against the Tyler Oil Corporation, M. F. Woods, and Margie Edgar, as defendants. By agreement of the parties, the case was transferred to the district court of Potter county. On trial before the court without a jury, judgment was rendered for the plaintiffs, and defendants Edgar and Woods have appealed to this court.

The case was dismissed in the trial court as to the Tyler Oil Corporation, for the reason that the defendant Woods had acquired the title to the lease held by the Tyler Oil Corporation by virtue of the levy of an execution against the said corporation upon said lease, sale duly made, and the rights of said corporation thereby transferred to said Woods.

By their amended original petition, the plaintiffs sought a decree of court canceling a certain lease executed by them to Margie Edgar, which by mesne assignments had become the property of the Tyler Oil Corporation, and which lease it is not necessary to give here in full—certain portions thereof will be quoted later.

Defendants answered by general and special exceptions, general denial, and a special plea that the defendant Woods had acquired the rights and title of the Tyler Oil Corporation in said lease. There were other special pleas not necessary to state.

The consideration for said lease is stated therein to be that the lessee agrees and covenants:

"1st. To deliver to the credit of lessor, free of cost, in the pipe line to which he may connect his wells, the equal one-eighth part of all oil produced and saved from the leased premises.

"2nd. To pay the lessor Two Hundred Dollars, each year, in advance, for the gas from each well where gas only is found, while the same is being used off the premises, and lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling house on said land during the same time by making his own connections with the well at his own risk and expense.

"3rd. To pay lessor for gas produced from any oil well and used off the premises at the rate of one-eighth (⅛th) of all gas produced and Dollars sold off said premises for the time during which such gas shall be used, said payments to be made each three months in advance.

"If no well be commenced on said land on or before the eleventh day of June, 1924, this lease shall terminate as to both parties, unless the lessee on or before that date, shall pay or tender to the lessor, or to the lessor's credit in the First National Bank at Amarillo, Texas, or its successors, which shall continue as the depository regardless of changes in the ownership of said land, the sum of Four Hundred and $^{60}/_{100}$ Dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for twelve months from said date. In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privilege granted to the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid and any and all other rights conferred.

"Should the first well drilled on the above described land be a dry hole, then and in that event if a second well is not commenced on said land within twelve months from the expiration of the last rental period for which rental has been paid this lease shall terminate as to both parties; unless the lessee on or before the expiration of said twelve months shall resume the payment of rentals in the same amount and in the same manner as hereinbefore provided. And it is agreed that upon the resumption of the payment of rentals, as above provided, that the last preceding paragraph hereof governing the payment of rentals and the effect thereof, shall continue in force just as though there had been no interruption in the rental payments."

As to the terms of said lease, it is provided:

"It is agreed that this lease shall remain in force for a term of five years from this date and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee."

It appears from the record that the rentals were paid, in lieu of drilling operations, on or before the 11th day of June, in each of the three years, 1924, 1925, and 1926, but that no rental was paid on or before June 11, 1927, for the ensuing year. There was an apparent effort to begin the drilling of a well by preparations therefor prior to June 11, 1927, in lieu of said rental payments. The evidence discloses that the defendant Woods entered into a contract with the Tyler Oil Corporation for the drilling of a well on the land in controversy some time in the early part of the year 1927. Woods testified as to the building of the derrick, the building of a shack, and the placing of the necessary machinery on the said land, and that the machinery was connected up by the 11th day of June, 1927, engine and all, and ready to fire up at that time, and the well was actually spudded in. He had to haul water quite a distance, but a little later a water well was drilled.

The question of good faith in the beginning of the well is abundantly supported by the fact that, at the time Woods placed the derrick and machinery on the ground, he could

have extended the time by the payment of the $62 rental, but instead some $5,000 or more was expended in the commencement of the well.

The plaintiff John Q. Bost testified that the derrick and two shacks had been built on the land prior to June 11, 1297. He also testified, minimizing the character of the "spudding in" that had been done at the site of the well.

■ Under these facts, we think that, so far as concerns the plaintiff's right to declare a forfeiture for the necessary payment of rental and the failure on the part of the lessee to begin operations for the drilling of a well, these preparations evidenced the commencing of drilling operations and extended the lease contract to the full term of five years, its primary term, which would be an extension of said lease for the fifth or last year without the payment of rentals. McCallister v. Texas Co. (Tex. Civ. App.) 223 S. W. 859–861 (writ refused), and authorities therein cited.

In this case there was a down payment of $7,000 paid upon and for a number of leases, including the lease in controversy, but it is not necessary to discuss the effect of this payment upon the extension of the contract for the full term of years; neither is it necessary to consider appellants' contention that, under the conditions of the down payment and the kind of the drilling operations, diligence was not required in the completion of the well. We will now state our reasons for not considering and deciding those questions.

The Tyler Oil Corporation as owner of the lease, by assignment, made a contract with the defendant Woods to drill a well on this land. After he had placed the derrick and machinery on the ground, as shown above, Woods brought suit against the Tyler Oil Corporation to cancel the drilling contract and for damages. The trial court rendered judgment canceling the drilling contract, and also gave Woods a money judgment. In due season Woods had an execution issued and had the interest in and title to the lease held by the Tyler Oil Corporation sold thereunder, and at said sale bought in said lease. This purchase by Woods at such sale was on the 6th day of March, 1928. There appears to be no contest over the fact that such sale and purchase vested in Woods whatever title and rights the Tyler Oil Corporation had in and to the lease.

Considering the evidence upon the question of the plaintiffs' conduct in declaring or attempting to assert a forfeiture of the lease, we find that the plaintiff testifies that he had a conversation with Mr. Tyler before June 11th about the status of the lease. Tyler claimed to be president of the Tyler Oil Corporation. In this conversation the plaintiff John Q. Bost informed Mr. Tyler that the lease would be forfeited. Afterwards he claimed that he told Tyler that the lease was forfeited. The plaintiff, when questioned, denied that he or his attorneys gave notice to several different parties or to one party that they had better not make any contracts with Tyler, as the lease was going to be forfeited. At this point Mr. S. A. L. Morgan, who is a party plaintiff, and interested in the result of the suit at bar and one of the attorneys for the plaintiffs, stated in open court that late in the fall of 1927 he did write such a letter to a Mr. Dickenson of Oklahoma City.

■■ There is no question in our minds, as gathered from the record, that prior to June 11, 1927, the plaintiff had declared his intention to forfeit the lease, and that after that date he stated that he had forfeited it. This being true, and his declarations being followed by the filing of this suit on January 26, 1928, the Tyler Oil Corporation was under no obligation to exercise further diligence in continuing the drilling of the well. Defendant Woods succeeded the Tyler Oil Corporation in its rights and title to the lease on the 6th day of March, 1928, about three months before June 11, 1928, the date of the expiration of the primary lease period. He testifies that as such owner he was ready, able, and willing to proceed with the drilling, but that he was deterred from doing so by the reason of the pendency of the suit against the Tyler Oil Corporation, Margie Edgar, and himself, in which plaintiff was seeking the cancellation of the lease. Under these conditions and circumstances, the plaintiffs were not in a position to demand diligence in the further development of the property for oil or gas by the continued drilling of the well, and no further diligence was required. Consumers' Gas Trust Co. v. Worth, 163 Ind. 141, 71 N. E. 489; Weaver Mining Co. v. Guthrie, 189 Mo. App. 108, 175 S. W. 118; Leonard v. Busch-Everett Co., 139 La. 1099, 72 So. 749; McCallister v. Texas Co., supra.

For the reason that the defendant Woods, as agent of the Tyler Oil Corporation, had begun the drilling of a well for the production of oil and gas prior to June 11, 1927—that this beginning of the oil well drilling extended the lease contract to the end of the primary period, namely, June 11, 1928, and that the plaintiffs had by their declarations and suit, as stated above, excused the defendants from diligence in the further drilling of the well—we hold that the trial court erred in rendering judgment in favor of the plaintiffs.

For the reasons stated, we reverse the judgment of the trial court, and here render judgment that the plaintiffs take nothing from the defendants Edgar and Woods, and further that the defendants Woods and Edgar recover as prayed for by them in their amended pleadings.

Reversed and rendered.

## On Motion for Rehearing.

By reason of the fact that the evidence appears not to have been fully developed in this

cause, the motion for rehearing is granted in part, and the judgment of this court rendering judgment in this cause is set aside, and the cause is reversed and remanded for a new trial.