# VALENCE OPERATING COMPANY, Appellant,

v.

# ANADARKO PETROLEUM CORPORATION, Appellee.

No. 06–09–00023–CV.

Court of Appeals of Texas, Texarkana.

Submitted Oct. 21, 2009.

Decided Jan. 15, 2010.

---

Eric S. Lipper, Joe G. Roady, Hirsch & Westheimer, PC, Houston, for Appellant.

Brandon J. Edmundson, Shayne D. Moses, David A. Palmer, Moses, Palmer & Howell, LLP, Fort Worth, for Appellee.

Before MORRISS, C.J., CARTER and CORNELIUS,* JJ.

## OPINION

Opinion by Justice CORNELIUS (Retired).

This case involves the interpretation of a nonconsent provision in a joint operating agreement to develop oil and gas leases. Although the case presents many issues, the principal question is whether Valence Operating Company (Valence) actually commenced work on its proposed operation to drill four wells within the time frame specified by a joint operating agreement.

Valence entered into a joint operating agreement with Anadarko Petroleum Corporation's (Anadarko) predecessor, Union Pacific Resources Company to develop oil and gas leases in the Ballow Estate Gas Unit No. 1 in Rusk County. Anadarko, which owned a 65.62 percent working interest in the unit, was designated Operator in the Joint Operating Agreement. Valence was a nonoperator, owning an approximate twenty-one percent interest.

Pursuant to Article VI of the Joint Operating Agreement, Valence proposed to drill four wells in the unit. As a nonoperator, Valence's proposal to drill the wells was specifically covered by Article VI.B.1 and 2, which provided:

1. Proposed operations:

* William J. Cornelius, Chief Justice, Retired, Sitting by Assignment.

Should any party hereto desire to drill any well on the Contract Area other than the (initially proposed well contemplated by the agreement) ... the party desiring to drill, rework, deepen, or plug back such a well shall give the other parties written notice of the proposed operation, specifying the work to be performed, the location, proposed depth, objective formation and the estimated cost of the operation. The parties receiving such a notice shall have thirty (30) days after receipt of the notice within which to notify the parties wishing to do the work whether they elect to participate in the cost of the proposed operation. Failure of a party receiving such notice to reply within the period above fixed shall constitute an election by that party not to participate in the cost of the proposed operation.

2. Operations by Less than All Parties: If any party receiving such notice elects not to participate in the proposed operation, then, in order to be entitled to the benefits of this article, the party or parties giving the notice and such other parties as shall elect to participate in the operation shall, within sixty (60) days after the expiration of the notice period of thirty (30) days actually commence work on the proposed operation, and complete it with due diligence.

The Joint Operating Agreement also provided that

[t]itle examination shall be made on the drill site of any proposed well prior to commencement of drilling operations. ... No well shall be drilled on the Contract Area until after (1) the title to the drill site has been examined as above provided, and (2) the title has been approved by the examining attorney or title has been accepted by all of the parties who are to participate in the drilling of the well.

Pursuant to Article VI.B.1, Valence sent a letter to Anadarko on December 14, 1999, proposing "immediate drilling" of four wells in the contract area. Anadarko received the letter on December 17. Valence gave Anadarko thirty days from its receipt of the letter to consent to the project. Because the cost of the proposed project is only borne by consenting parties, a nonconsenting party relinquishes its interest to consenting parties for a period of time. Also, a nonconsenting party does not enjoy the revenue from a proposed project until all consenting parties have recovered their costs, along with an additional portion of revenue to compensate them for the risks taken in investing in the project. Anadarko did not consent. Therefore, as prescribed by Article VI.B.2, Valence became the operator for the purposes of its proposal, and was mandated to "actually commence work on the proposed operation" by March 17, 2000. Once the project began, Valence was required to "complete it with due diligence" in order to reap the benefits of Anadarko's nonconsent status. When the deadline passed, Anadarko brought suit against Valence for breach of contract, negligence, declaratory judgment, quantum meruit, unjust enrichment, conversion, and an accounting, alleging that Valence failed to perform its obligation to actually commence operations for drilling the proposed wells before March 17, 2000.

Both Valence and Anadarko contended at trial that the issue of Valence's compliance with the requirement of Article VI.B.2 that Valence "actually commence work on the proposed operation" by the prescribed deadline and "complete it with due diligence" was a question of law. The trial court, however, concluded that the issue was not established as a matter of law and submitted the issue to the jury by the following question:

As to each of the wells in question, did Valence fail to comply with the provision of Article VI.B.2 of the Operating Agreement which states that "the party or parties giving the notice and such other parties as shall elect to participate in the operation shall, within sixty (60) days after the expiration of the notice period of thirty (30) days ... actually commence work on the proposed operation and complete it with diligence?"

The jury answered "yes" as to each well. The trial court rendered judgment for Anadarko on the jury verdict for actual damages, attorneys' fees, and prejudgment interest.

Valence raises fifteen issues on appeal, which we group for discussion as follows: I. Whether as a matter of law, Valence actually commenced work on the proposed operation before the deadline and completed it with due diligence? (Issues 1, 2, 3, and 4); II. The trial court's failure to give certain instructions and definitions to the jury. (Issues 6, 7, 8, 9, 10, 11, and 12); III. There is insufficient evidence to support the jury's verdict. (Issue 14); IV. The trial court's failure to exclude Owen Barnhill's testimony as to the generally accepted meaning of "commencement of operations" in the oil and gas industry. (Issue 5); V. The trial court's failure to dismiss Anadarko's suit for want of prosecution. (Issue 15); VI. The trial court's alleged error in awarding Anadarko prejudgment interest. (Issue 13). For the reasons set out hereafter, we overrule all these issues and affirm the trial court's judgment.

■■■ Valence contends the trial court should have instructed a verdict or rendered judgment *non obstante veredicto* in its favor because its compliance with Article VI.B.2 of the Joint Operating Agreement was proven as a matter of law.

There is no dispute as to what acts Valence performed before the deadline. The dispositive question is whether, within the meaning of Article VI.B.2 those acts constituted commencement of actual work on the proposed operation before the deadline that was completed with due diligence.

Valence did these things before the deadline: On December 10, 1999, an authorization for expenditures was prepared. On January 1, 2000, a topographic map of locations was received. On February 3, surveyor Jack Ward staked locations and took pictures of well sites. On February 18, 2000, a preliminary list of instruments regarding title was obtained. Between February 16 and March 8, 2000, several meetings were held to discuss locations and how to build on the locations. On March 2 and 3, detailed cost and facility estimates were prepared for all wells. Preliminary run sheets were prepared on March 3, and on March 16, 2000, the Texas Railroad Commission issued drilling permits for all four wells. The deadline for commencing actual work on the proposed operation was March 17, 2000. All other work by Valence on the proposed operation, including building access roads, restaking the well locations, securing title opinions, signing drilling contracts, and the actual beginning of drilling, was done after the deadline had passed.

■■■ Actual drilling is not necessary in order to comply with an obligation to commence operations for drilling as required by contractual provisions in many oil and gas leases and joint operating agreements. Preparatory activities such as building access roads to the drill site, moving tools and equipment onto the drill site, providing a water supply, and similar activities are usually sufficient if they are performed with the bona fide intention to proceed with diligence to the completion of the well. *Dorsett v. Valence Operating Co.,*

111 S.W.3d 224, 230 (Tex.App.-Texarkana 2003), *rev'd on other grounds,* 164 S.W.3d 656 (Tex.2005); *Petersen v. Robinson Oil & Gas Co.,* 356 S.W.2d 217, 220 (Tex.Civ. App.-Houston 1962, no writ). If there is doubt or controversy as to the intent of the party claiming to have commenced operations for drilling by performing preparatory acts, the question is one of mixed law and fact and should be submitted to the jury. *Forney v. Ward,* 25 Tex.Civ.App. 443, 62 S.W. 108 (1901); *Dorsett v. Valence Operating Co.,* 111 S.W.3d at 224, 231 n. 5; *Woods v. Bost,* 26 S.W.2d 299, 303 (Tex. Civ.App.-Amarillo 1930, writ dism'd); *Edgar v. Bost,* 14 S.W.2d 364 (Tex.Civ.App.- Amarillo 1929, no writ); *Heard v. Pratt,* 257 S.W. 660, 663 (Tex.Civ.App.-San Antonio 1923, writ dism'd); *Moore v. West,* 239 S.W. 710 (Tex.Civ.App.-San Antonio 1922, writ dism'd w.o.j.).

The preliminary activities conducted by Valence in advance of the deadline consisted mostly of acts that are sometimes characterized in the industry as "backroom preparations" and securing drilling permits, with no on-site activity except a preliminary staking of wells. These preliminary activities were not sufficient to constitute, as a matter of law, the actual commencement of work on the proposed operation within the meaning of Article VI.B.2 of the Joint Operating Agreement. The trial court correctly so concluded and submitted to the jury the issue of Valence's compliance. *See Woods v. Bost,* 26 S.W.2d at 303; *see also Ridge Oil Co. v. Guinn Invs., Inc.,* 148 S.W.3d 143 (Tex. 2004).

Valence challenges the sufficiency of the evidence to support the jury's finding that it failed to comply with the requirements of Article VI.B.2. Evidence is legally sufficient if it would enable reasonable and fair-minded persons to reach the verdict under review. *City of Keller v. Wilson,* 168 S.W.3d 802, 807 (Tex.2005). In determining that question, we credit favorable evidence if a reasonable fact-finder could do so, and we disregard contrary evidence unless a reasonable fact-finder could not. *Id.* at 823. In weighing a factual sufficiency challenge, we consider, weigh, and examine all the evidence supporting the finding, and we set aside the verdict only if that evidence is so weak that the verdict is clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

There was considerable testimony at the trial from witnesses for Valence and for Anadarko as to the meaning of the term "commencement of operations" as used in the oil and gas industry generally in oil and gas leases, and specifically in joint operating agreements. Actions amounting to commencement of operations, according to some testimony, can include preliminary acts such as selecting well locations, preparing cost estimates, surveying the drill site, and other nonspecific acts preparatory to the actual spudding of wells. On the other hand, there was testimony that commencement of operations means actual preparing of the drill site, moving a drilling rig or other equipment onto the drill site, or actually "moving dirt," in the words of some witnesses. Considering all of the evidence, we conclude there is sufficient evidence to support the jury's verdict. The jury could have found from the evidence that Valence's preliminary work was not such that showed a bona fide intent to commence actual work on the proposed operation before the deadline and proceed with diligence to the completion of the wells.

■■■ Valence raises several issues contending that the trial court erred in refusing its requests to submit various instructions and definitions to the jury. The requests included an instruction as to the legal meaning of the pertinent Joint Oper-

ating Agreement provision, as well as special definitions of "diligence," "bona fide intention," "reasonably prudent operator," and "good faith." An instruction is proper if it will assist the jury in answering the questions submitted. TEX.R. CIV. P. 277; *Elbaor v. Smith,* 845 S.W.2d 240, 243 (Tex. 1992). A definition may properly be submitted to the jury if a term used in the charge has a distinct legal meaning, or if it differs in meaning from the usual and commonly accepted meaning. *Brookshire Bros. v. Lewis,* 997 S.W.2d 908 (Tex.App.-Beaumont 1999, pet. denied). If the meaning that the parties intended to give to a term is a question of fact for the jury, and there is conflicting evidence before the jury as to the meaning of the term, it should not be defined, and the jury may decide the question based on its view of the evidence. *See, for example, Magnolia Petroleum Corp. v. Long,* 126 Tex. 195, 86 S.W.2d 450, 455–56 (1935); *Miller v. Watson,* 257 S.W.2d 839, 841 (Tex.Civ.App.-Dallas 1953, writ ref'd n.r.e.); *Whitaker v. Haynes,* 128 S.W.2d 532, 533–34 (Tex.Civ. App.-Beaumont 1939, writ dism'd, judgm't corrected). The trial court's decision to refuse to submit a particular instruction or definition is reviewed by an abuse of discretion standard. *Shupe v. Lingafelter,* 192 S.W.3d 577, 579 (Tex.2006). A trial court abuses its discretion if it acts arbitrarily or without reference to guiding rules and principles. *Walker v. Packer,* 827 S.W.2d 833, 840 (Tex.1992).

Valence argues that the trial court erred in refusing to submit an instruction requested by Valence on the key issue of whether Valence actually commenced work on a timely basis. The requested instruction would have instructed the jury in connection with the meaning of "actually commence work on the proposed operation":

> The terms of the provision in question must be considered as having been complied with, no matter how slight may

have been the commencement of any portion of the work which was a necessary and indispensable part of the work required in drilling a well or wells, if performed with such bona fide intention and with such diligence.

Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *Valence Operating Co. v. Dorsett,* 164 S.W.3d at 662. A trial court must submit "such instructions and definitions as shall be proper to enable the jury to render a verdict." TEX.R. CIV. P. 277; *see Union Pac. R.R. Co. v. Williams,* 85 S.W.3d 162, 166 (Tex.2002). A proper jury instruction is one that assists the jury and is legally correct. *Transcon. Ins. Co. v. Crump,* 274 S.W.3d 86, 99 (Tex.App.-Houston [14th Dist.] 2008, pet. granted); *Town of Flower Mound v. Teague,* 111 S.W.3d 742, 759 (Tex.App.-Fort Worth 2003, pet. denied).

If the jury charge is legally correct, a trial court has broad discretion whether to submit questions, definitions, and instructions to the jury. *Hyundai Motor Co. v. Rodriguez,* 995 S.W.2d 661, 664 (Tex.1999); *see Ford Motor Co. v. Ledesma,* 242 S.W.3d 32, 41 (Tex.2007) (charge omitting indispensable element of proof was legally incorrect). We review asserted jury-charge errors for abuse of discretion. *Owens–Corning Fiberglas Corp. v. Martin,* 942 S.W.2d 712, 721–22 (Tex.App.-Dallas 1997, no writ). Trial courts have considerably more discretion in submitting jury instructions than in submitting jury questions. *Harris v. Harris,* 765 S.W.2d 798, 801 (Tex.App.-Houston [14th Dist.] 1989, writ denied). If, in light of the entire charge, a particular instruction would exaggerate, minimize, or withdraw from the jury's consideration some

pertinent evidence, that instruction would be improper. *Moody v. EMC Servs., Inc.,* 828 S.W.2d 237, 244 (Tex.App.-Houston [14th Dist.] 1992, writ denied); *Lively Exploration Co. v. Valero Transmission Co.,* 751 S.W.2d 649, 653 (Tex.App.-San Antonio 1988, writ denied).

We find that the "no matter how slight" language in Valence's proposed instruction is an exaggeration or minimization of the evidence. Consequently, the trial court at least had the discretion to deny the requested instruction. *See, e.g., R.E. Taylor Syndicate v. James,* 243 S.W. 1105, 1109 (Tex.Civ.App.-Amarillo 1922, writ ref'd) (merely leaving derrick and other materials on site does not establish diligent prosecution of drilling). We also note that no authority cited by Valence mandates or validates the proposed instruction.

Also, because Valence and Anadarko agreed at trial that the pertinent terms of the Joint Operating Agreement should be interpreted according to their plain, commonly understood meanings, and because there was considerable testimony before the jury as to the meaning of the words defining Valence's obligations under Article VI.B.2 of the Joint Operating Agreement, we conclude that the trial court did not abuse its discretion in refusing to submit Valence's requested instructions and definitions.

■ Valence also contends the trial court committed reversible error in refusing to exclude the testimony of Anadarko's witness, Barnhill. Anadarko produced Barnhill to testify to the common understanding of the phrase "commence work on a proposed operation" in the oil and gas industry. Valence filed a *"Daubert"* motion, contending that Barnhill was not qualified to give his testimony, and that his testimony was unreliable because it was not based on scientific principles and accepted scientific research. *See Daubert v.*

*Merrell Dow Pharms., Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

Barnhill is a certified professional landman who has worked in the oil and gas industry for over thirty-two years. He served as an instructor for the American Association of Professional Landmen teaching landmen about oil and gas leases, joint operating agreements and related agreements, as well as standard practices in the oil and gas business. Barnhill also taught a review course for the professional landman certification examination addressing similar language to that at issue in this case. Barnhill reviewed all joint operating agreements during his employment with Getty Oil Company, and actually prepared some of those agreements. The land department that he supervised proposed wells and was involved in the drilling and operation of wells. He testified he was well acquainted with the common understanding of "commencement of operation" requirements of oil and gas leases and joint operating agreements. Valence argues that, because Barnhill is a landman rather than a driller, he was not qualified to give testimony as to the meaning of "commence operations" as used in the oil and gas business, and his testimony was unreliable because it was not based on accepted and tested scientific theory or actual experience. We find, however, that the trial court did not abuse its discretion in allowing Barnhill's testimony. Barnhill's testimony was not about science or scientific causation, as involved in *Daubert* and similar cases, but rather was about actual practice and the general understanding in the oil and gas industry as to what constitutes commencement of operations. Even though Barnhill was a landman and not a driller, he was qualified to testify about the practices in the industry with which he was familiar. Because the issue of Valence's compliance with the

Joint Operating Agreement's requirement of commencement of operations was submitted to the jury, this kind of evidence was relevant and appropriate. *See Forney v. Ward,* 25 Tex.Civ.App. 443, 62 S.W. 108, where the court held that the issue of the meaning of "commencement of operations" should be considered with "the testimony ... as to the general understanding among persons engaged in the business of boring wells as to when a well was begun." Several other witnesses in this case, both for Valence and for Anadarko, gave testimony as to the common understanding and practices in the industry concerning the meaning of "commencement of operations."

 Valence complains because the trial court refused to dismiss Anadarko's suit for want of prosecution. The decision to grant or deny a motion to dismiss a suit for want of prosecution is within the trial court's discretion. We review the trial court's denial of a motion to dismiss for want of prosecution by an abuse of discretion standard. *In re Marriage of Seals,* 83 S.W.3d 870, 873–74 (Tex.App.-Texarkana 2002, no pet.). In considering whether to dismiss a case for want of prosecution, the trial court should consider the entire history of the case, including: the length of time the case has been on file, the extent of activity in the case, whether a trial setting has been requested, and whether a reasonable excuse for delay exists. *Id.* at 874. This suit was filed in February 2001. Valence filed a motion to dismiss for want of prosecution in May 2006. Anadarko served supplemental requests for document production in February 2004, but took no further action in the case after that date until May 2006 and did not request a trial setting. No deposition had been taken as of May of 2006. There was no action in the case between February 2004 and May 3, 2006. Anadarko argues that the reason for its delay was this Court's issuance of the opinion in *Dorsett v. Valence Operating Company,* in which we discussed what actions may constitute "actual commencement of work." 111 S.W.3d at 229–30. The Texas Supreme Court granted review in that case and did not issue its opinion in that appeal until May 20, 2005. Anadarko says it anticipated that the Texas Supreme Court's ruling in the *Dorsett* appeal would resolve this dispute and thus avoid the need for each party to incur the expense of going to trial in this case. The Texas Supreme Court's opinion, however, did not resolve the question of what constitutes commencement of operations for drilling. Anadarko asserts that, when the Texas Supreme Court's opinion was issued, it began to determine what discovery would be needed, and ten months after the mandate was issued, it contacted Valence to set up a schedule for discovery. The trial was held in November 2008.

 The purpose of allowing a trial court to dismiss a suit for want of prosecution is to provide a penalty when a party seeks to take advantage over its opponent by deliberate neglect and delay and a reluctance to have the merits of the case judged in a trial. The purpose of the Texas Rules of Civil Procedure is to "obtain a fair, just, and equitable adjudication of rights under established principles of law." Tex.R. Civ. P. 1. A dismissal for want of prosecution disposes of a case without deciding the substantive issues of the controversy. Consequently, a just resolution of the case usually requires a trial on the merits, rather than a dismissal. *S.W. Airlines v. Jaeger,* 867 S.W.2d 824, 836 (Tex.App.-El Paso 1993, writ denied); *Olin Corp. v. Coastal Water Authority,* 849 S.W.2d 852, 858 (Tex.App.-Houston [1st Dist.] 1993, no writ). Considering these principles and the circumstances of this

case, we conclude that the trial court did not abuse its discretion in overruling the motion to dismiss for want of prosecution.

■ Valence contends that Anadarko is not entitled to prejudgment interest because this suit involves a title dispute. *See* TEX. NAT. RES.CODE ANN. § 91.402(b)(1)(2) (Vernon Supp. 2009), § 91.403(b) (Vernon 2001). The Texas Natural Resources Code requires one who is obligated to pay oil and gas revenues to another to pay interest to the payee if the required payments are not made within certain time limits. TEX. NAT. RES.CODE ANN. § 91.402(a) (Vernon Supp. 2009). That requirement does not apply, however, if a dispute concerning title exists that would affect the distribution of payments. *See* TEX. NAT. RES.CODE ANN. § 91.403(b). This action is for breach of contract. Both parties to this action recognize that a temporary change in the entitlement to certain payments of oil and gas revenues may occur if a party fails to comply with Article VI.B.2 of the Joint Operating Agreement. Neither party disputes the other party's title to the oil and gas payments that will be paid according to the compliance or noncompliance with the terms of the Joint Operating Agreement. Therefore, this action does not involve a legitimate title dispute as contemplated by the Texas Natural Resources Code, and the trial court did not err in awarding prejudgment interest.

■ Valence also disputes the rate of the prejudgment interest awarded by the judgment, arguing there is no evidence to support a six percent rate. This contention was not raised by Valence in the trial court, however, either in its motion for new trial or in the hearing on the motion for new trial, where Anadarko argued for a six percent rate. Thus, Valence's complaint has been waived. TEX.R.APP. P. 33.1; *Larrumbide v. Doctors' Health Facilities*, 734 S.W.2d 685 (Tex.App.-Dallas 1987, writ denied).

For all the reasons heretofore stated, we affirm the trial court's judgment.